DARYL D. SULLIVAN, Plaintiff-Appellee, *v.* MARY ANN SULLIVAN,
Defendant-Appellant.

Third District   No. 80-629

Opinion filed July 30, 1981.

William E. Stewart, of Kewanee, for appellant.

James H. McNenny, of Reese, McNenny, Pyle & Drake, of Newark, Ohio, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, Mary Ann Sullivan, appeals from the order of the Circuit Court of Henry County which dismissed her petition for rule to show cause, rejected her claim of attorney's fees, transferred the custody of one of the parties' daughters from Mary to the plaintiff, Daryl D. Sullivan, and reduced Daryl's child-support and maintenance obligation. We affirm.

In 1968, Mary and Daryl were divorced in New York after marrying in Illinois in 1955. By order of the New York court and pursuant to a separation agreement, Daryl was to pay $655 per month as maintenance and support to Mary and their seven children then in her custody. Following the divorce, Mary moved to Illinois and Daryl to Ohio.

In 1977, Daryl initiated a change of custody proceeding in the Circuit Court of Henry County to legally recognize that he had custody of one of the parties' daughters, Mary Lou, who lived with him in Ohio for the previous 15 months, apparently in violation of the New York decree. Mary opposed the petition and also requested *inter alia* a prospective increase in child support and maintenance. The circuit court denied both parties' requests, but this court in *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 373 N.E.2d 829, reversed and remanded. Upon further proceedings, the circuit court in 1978 denied the change of custody, increased Daryl's monthly maintenance and support obligations to $1,000, and

ordered him to pay Mary's attorney's fees of $2,950. Neither party appealed from this order.

In November 1978, an Ohio court, without Mary being present, modified the New York divorce decree and placed one of the parties' daughters, Mary Lou, in the custody of Daryl. Although the court recognized that Daryl improperly retained his daughter and that the Illinois court had recently declined to change custody of Mary Lou, it nevertheless noted Mary Loy had lived with her father for the past 15 months and believed the change of custody was in the child's best interest.

In an attempt to collect the attorney's fees and ensure payment of the increased maintenance and support, Mary commenced proceedings pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) which was applicable in Illinois. (Ill. Rev. Stat. 1977, ch. 40, par. 1201 *et seq.*) and Ohio (Ohio Rev. Code §3115.01 *et seq.*). URESA provides two procedures for enforcing a foreign support order: complaint and registration. In electing the former procedure, Mary first filed a complaint in the initiating State (Illinois) setting forth facts from which it could determine whether the obligor (Daryl) owed a duty of support and whether the responding State (Ohio) could obtain jurisdiction over the obligor or his property. The Illinois court then certified the complaint and forwarded it to the responding court. Following an evidentiary hearing, the Ohio court accepted the finding of the Illinois court that Daryl owed a duty of support.

The Ohio court refused, however, to be bound by the amount of the obligation as set forth in the 1978 support order. Instead, it considered the Illinois order advisory only, and by applying Ohio law, found the $1,000 monthly installments substantially exceeded Mary's needs. Accordingly, the court in January 1979 prospectively modified the obligation and ordered Daryl to pay $600 per month to Mary and the five children then in her custody ($420 allocated to child support and $180 to maintenance), and $100 per month directly to one daughter for 7 months. Mary made no appeal from the Ohio order. In accordance with the Ohio order, Daryl proceeded to pay the support and maintenance obligations.

In May 1980, Mary filed a petition for a rule to show cause in the Circuit Court of Henry County requesting that court to find Daryl in contempt for failing to comply with the 1978 Illinois order. Following a continuance, Daryl moved for a prospective reduction of support and maintenance under the Illinois order. The circuit court ruled that the Ohio court had jurisdiction to modify the Illinois support order, that the Ohio order "took precedence over the previous order of this court," and that, by making all payments as provided in the Ohio order, he was not in arrears. The court also transferred the custody of Mary Lou to Daryl, modified the Illinois order by reducing Daryl's monthly child support and

maintenance obligations to $500 ($400 in support for two remaining children and $100 in maintenance), and disallowed Mary's claim for attorney's fees arising from the instant dispute.

■■ Mary first argues the circuit court erred in failing to enforce this court's decision of *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 373 N.E.2d 829. In that earlier appeal this court stated Mary was entitled to the $700 in arrearages alleged in her counterclaim. Our decision did not order the payment of the sum, however. Instead, we reversed the circuit court's dismissal of her claim and remanded for further proceedings. Thereafter, that court entered its order, drafted by Mary's counsel, which failed to incorporate the $700 claim. Mary failed to appeal from that order entered in 1978, and accordingly, she cannot complain at this time that the $700 arrearage referred to in our earlier decison was not incorporated in the circuit court's order upon remanding.

She next contends that the circuit court erred when it gave precedence to the Ohio order over the 1978 Illinois order and thereby denied her of $12,950 in past-due nonmodifiable support and maintenance installments that had accrued under the 1978 Illinois order.

■■ We find no error in the circuit court's decision to recognize the Ohio order over the previous Illinois order. Following the 1978 Illinois order, Mary properly entered that order in Ohio one month later by means of an URESA complaint. With both parties present, the Ohio court concurred in the finding that Daryl was obligated to pay support, but it fixed a different amount of prospective support from that set by the initiating court. The law is generally settled that, under URESA, a responding court may enter a new decree for a different amount of prospective child support from that of the initiating court. (See *Ainbender v. Ainbender* (Del. Super. 1975), 344 A.2d 263; *Davidson v. Davidson* (1965), 66 Wash. 2d 780, 405 P.2d 261; *Moore v. Moore* (1961), 252 Iowa 404, 107 N.W.2d 97; *Commonwealth ex rel. Byrne v. Byrne* (1968), 212 Pa. Super. 566, 243 A.2d 196; H. Clark, Law of Domestic Relations in the United States 210 (1968), Kelso, *Reciprocal Enforcement of Support Act: 1958 Dimensions*, 43 Minn. L. Rec. 875, 880 (1958); but see *Craft v. Hertz* (N.D. 1970), 182 N.W.2d 293; *Coumans v. Albaugh* (1955), 36 N.J. Super. 308, 115 A.2d 641.) Specifically, the Ohio court prospectively reduced Daryl's obligation from $1,000 to $600 per month because, contrary to Illinois law, that State refused to recognize inflation and maturation as reasons for increasing support.

We do note, however, that Ohio may well have denied the 1978 Illinois order full faith and credit. It is generally established that one State must recognize a sister State's judgment to the degree that it is nonmodifiable. (*Griffin v. Griffin* (1945), 327 U.S. 220, 90 L. Ed. 635, 66 S. Ct. 556; *Sistare v. Sistare* (1910), 218 U.S. 1, 54 L. Ed. 905, 30 S. Ct. 682.) The law is

equally well settled that the second forum must apply to the first forum's law to determine the extent of modification. (See *Worthley v. Worthley* (1955), 44 Cal. 2d 465, 283 P.2d 19; *Light v. Light* (1957), 12 Ill. 2d 502, 147 N.E.2d 34; Restatement (Second) of Conflict of Laws §109 (1971).) Accordingly then, to determine the degree to which the 1978 Illinois degree was modifiable, the Ohio court should have referred to section 510 of the Illinois Marriage and Marriage Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 510). That section dictates that a judgment of maintenance or support may not be modified retroactively and may be modified prospectively only upon a showing of changed circumstances. Moreover, courts of Illinois have consistently held that those facts which were the basis of the original decree become *res judicata* and that changed circumstances justifying modification of support must occur since the date of the decree. (See *Dixon v. Dixon* (1977), 45 Ill. App. 3d 934, 360 N.E.2d 486.) In the case at bar, however, the Ohio court modified the Illinois decree within one or two months of the Illinois decree and based its ruling upon the same set of circumstances that the Illinois court had used and which had become *res judicata*. Furthermore, from our examination of the record, there was no indication of changed circumstances to justify the 1978 Ohio modification. Thus, although URESA may authorize a responding court to modify the initiating State's decree, the second forum must nonetheless give full faith and credit to the first judgment to the extent that it is nonmodifiable. By refusing to recognize our rules regarding modification, the Ohio court modified a judgment which was not subject to modification in Illinois.

■■ Nevertheless, even though we believe that the Ohio court may have failed to give our 1978 decree full faith and credit, we are required to give full faith and credit to Ohio's judgment. Any objections Mary had concerning the Ohio modification should have been directly appealed in Ohio and not collaterally attacked as she attempts to do here. The United States Supreme Court has long held that "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." (*Milliken v. Meyer* (1940), 311 U.S. 457, 462, 85 L. Ed. 278, 282-83, 61 S. Ct. 339, 342.) Furthermore, in the case of inconsistent judgments, the merger and bar rule found in the full faith and credit clause requires the latest judgment to be controlling in a third action between the parties. (See *Treinies v. Sunshine Mining Co.* (1939), 308 U.S. 66, 84 L. Ed. 85, 60 S. Ct. 44; *Lynn v. Lynn* (1951), 302 N.Y. 193, 97 N.E.2d 748; Restatement of Judgments §42 (1942).) Although a minority of jurisdictions hold that where the third action returns to the first forum, as in the case at bar, the latest judgment does not control if the second forum refused to give the first forum's judgment full faith and credit (see *Porter v. Porter* (1966), 101 Ariz. 131, 416 P.2d 564; *Colby v.*

*Colby* (1962), 78 Nev. 150, 369 P.2d 1019), those holdings are clearly inconsistent with *Treinies* and demonstrate the parochialism that the full faith and credit clause was intended to prevent. (See *DiRusso v. DiRusso* (1968), 55 Misc. 2d 839, 287 N.Y.S. 2d 171; Rodgers & Rodgers, *The Disparity Between Due Process and Full Faith in Credit*, 67 Colum. L. Rev. 1363 (1967); Note, 68 Harv. L. Rev. 719 (1955).) For this reason, the circuit court was correct in recognizing the more recent 1978 Ohio decree with respect to past-due nonmodifiable support and maintenance obligations.

Mary would equate the instant case with *Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 404 N.E.2d 1008. There, the parties were divorced in Illinois in 1971, with the husband obligated to pay support pursuant to Illinois Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 1 *et seq.*). In 1974, pursuant to a criminal complaint filed by the State's Attorney's office under the provisions of URESA, the husband was ordered to pay child support in the amount of $40 per week. In 1977, a rule to show cause filed in the criminal section was dismissed, and the amount of support arrearage was found to be zero. A year later, the wife's rule to show cause filed in the civil divorce action was also dismissed because the circuit court held she was bound by the finding in the criminal proceeding that no past due support payments were owing. This court reversed, finding the circuit court erred when it ruled that the 1977 decision in the criminal action was *res judicata* on the issue of support arrearages. In referring to section 31 of URESA, we declared that the criminal and civil enforcement proceedings of the Act are intended to be supplementary devices and are "not designed to serve as an independent basis for the imposition or termination of support orders." (*Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1065, 404 N.E.2d 1008, 1010.) That section provides:

> "A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court for this State." (Ill. Rev. Stat. 1975, ch. 68, par. 131.)

Therefore, contrary to the circuit court's ruling, we held that the criminal action, by dismissing the State's rule to show cause, did not affect the rights and duties arising from the civil action. Moreover, no *res judicata* flowed from the criminal action which bound the wife on the issue of

support arrearages because she was neither a party of, nor in privity to, the criminal proceeding.

*Armstrong* is completely inapposite to the case at bar. The Ohio action was not a distinct collateral enforcement action for past due installments, as was the situation in *Armstrong*. Here, the Ohio court prospectively modified the 1978 Illinois support order which Mary properly presented to that court. In no respect did the Ohio court nullify the Illinois order as it applied to past due support installments. Furthermore, there can be no question Mary was bound by the Ohio ruling as it applied to now past due installments arising since the date that ruling was entered.

■■ Accordingly, the circuit court correctly recognized and enforced the Ohio order over the 1978 Illinois order. The record also contains sufficient evidence to support that court's finding that no arrearage existed.

■■ Mary next contends that, because no pleadings for a change of custody were before the court, the court erred when it transferred the custody of Mary Lou from Mary to Daryl. We disagree. The court merely acknowledged and corrected an incongruity between the Ohio custody order of November 1978 that transferred her custody to Daryl, and the 1978 Illinois order that denied this request for a change of custody. In fact, at the time of the instant hearing, Mary Lou had lived with her father for more than 3 years. Nevertheless, the 1978 Illinois support order included Mary Lou as one of the children living in Mary's house. Thus, the circuit court, acting as a court of equity, simply made a change in the support order to reflect the true situs of the child's custody.

■■ ■ Mary also disputes the circuit court's denial of her claim for attorney's fees, arguing that, because her financial condition had remained unchanged since 1978 when this court declared she was entitled to reasonable attorney's fees in the instant case. The allowance of attorney's fees in divorce proceedings is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Although Mary's finances had not improved drastically since 1978, she recently received a promotion and raise and no longer supported three of the remaining five children. The court also noted Daryl had previously paid $3,450 of Mary's attorney's fees, albeit not voluntarily. Based on Mary's increased ability to pay, Daryl's compliance with the Ohio support order, and the not inconsiderable burden already placed on him, the court's denial of Mary's claim for $1,500 in attorney's fees for this instant proceeding did not constitute an abuse of discretion.

Mary next contests the court's dismissal of her motion to strike or dismiss certain motions made by Daryl. In the case at bar, Daryl filed a "Motion of the Plaintiff" that asserted five grounds for relief. Over Mary's objection, the court granted in part two of Daryl's prayers for relief—

reduced support and maintenance. She now claims the motions failed to give notice of sufficient facts to inform her of the basis of his claim; thus, the court violated her rights to procedural due process. We disagree with her contention and find she did have actual notice of the facts upon which the court granted Daryl's two grounds for relief.

■■■ In order to obtain a modification in support or maintenance, the moving party must allege and sustain facts demonstrating a material change in circumstances. (*Baker v. Baker* (1977), 53 Ill. App. 3d 186, 368 N.E.2d 379.) Although Daryl's "Motion of the Plaintiff" failed to allege sufficient facts to establish a change in circumstances, he attached to his motion a five-page memorandum which stated in detail the specific facts upon which Daryl relied to base his motion and which he proceeded to prove at the hearing. Mary clearly had adequate notice of the facts underlying Daryl's claims for relief. Therefore, the court committed no error in dismissing her motion to strike Daryl's motion.

Also, she alleges the circuit court abused its discretion when it prospectively reduced Daryl's support and maintenance obligations. We have already ruled that the court correctly enforced the Ohio order over the 1978 Illinois order. The Ohio order required Daryl to pay $600 per month, with $420 allocated to child support and $180 to maintenance. The present order requires him to pay $400 per month for child support and $100 for maintenance.

■■ The $20 per month reduction in child support was not unreasonable in light of the changed circumstances from January 1979, the date of the Ohio order, to October 1980, the date of the instant order. Notably, the number of children in Mary's household had decreased from five to two. We also disagree with Mary's contention that Daryl was still obligated to pay child support for their son, Tom, and that therefore, Daryl was obligated to support three children. As of the date of the instant order, Tom had reached age 21, which was not only beyond the age of majority, but beyond the age specified in the separation agreement incorporated into the parties' New York decree. The circuit court properly found the number of children in Mary's custody to be two. Thus, despite a reduction in the total amount of child support, each child's *pro rata* share increased from $84 to $200. Such a *pro rata* increase sufficiently provided for the increased cost of support caused by maturation and inflation.

Regarding the $80 monthly reduction in maintenance, we disagree with Mary's contention that Daryl's and her financial conditions remained substantially unchanged since the date of the Ohio order. Mary's annual net income was then approximately $5,930, she had accumulated no savings, but she did have $5,000 in equity from her residence, and her annual expenses were approximately $11,340. As for Daryl, his annual net income in 1978 was $44,000, his assets were unknown, and his expenses

exclusive of support were $33,600 annually. See also *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 373 N.E.2d 829.

■■ In 1980, Mary received a promotion and raise which increased her annual net income to $8,010. She still had accumulated no savings, but her home equity increased to $10,000, and her expenses remained unchanged. In light of this evidence of Mary's decreased needs, we find the circuit court did not abuse its discretion by reducing monthly maintenance from $180 to $100.

For the foregoing reasons, we affirm the order of the Circuit Court of Henry County.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.