In re MARRIAGE OF MYRNA IDA SCHUHAM, Petitioner-Appellee, and ANTHONY IRVING SCHUHAM, Respondent-Appellant.

First District (2nd Division)    Nos. 82—1800, 83—244 cons.

Opinion filed December 20, 1983.

David J. Letvin, of Rosenthal and Schanfield, of Chicago, and Schramm & Pines, of St. Louis, Missouri, for appellant.

Laurence J. Bolon, of Frank, Melamed & Bolon, Ltd., of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent Anthony Schuham (Anthony) appeals from an order of the circuit court modifying a divorce judgment rendered in Missouri and registered in Illinois. The order increased his monthly child-support payments prospectively. Petitioner Myrna Schuham (Myrna) cross-appeals the order's prospective effect. This appeal and cross-appeal are consolidated with Anthony's subsequent appeal from an order awarding Myrna attorney fees for the preceding action.

The issues raised on appeal and cross-appeal are whether the circuit court: (1) had *in personam* jurisdiction over Anthony; (2) had jurisdiction over the subject matter of the action; (3) erred in excluding evidence of Anthony's current wife's business expenses; (4) erred in applying Missouri law to determine the age of emancipation of the parties' children; (5) erred because the increase in Anthony's support obligation was against the manifest weight of the evidence; (6) incorrectly failed to apply the support increase retroactively to the date of the initial petition; and (7) erred in ordering Anthony to pay all of Myrna's attorney fees.

Anthony and Myrna were divorced on July 26, 1976, pursuant to a decree entered by the circuit court of St. Louis County, Missouri. Myrna was granted custody of their four minor children; Anthony was ordered to pay $208.33 monthly per child for support; and Anthony was given certain visitation rights. In 1977 Myrna's petition for increased child support was denied by the Missouri court after a hearing. On May 2, 1979, the Missouri court on Myrna's petition allowed the three youngest children to live with her in Chicago and gave custody of the oldest child to Anthony, who remained in Missouri. In a supplemental order of the same date, the Missouri court expressly retained exclusive jurisdiction over the parties' minor children and any subsequent modification of the dissolution decree.

Myrna filed, on October 6, 1980, a petition in the circuit court of Cook County to register the Missouri divorce decree and supplemental order as foreign judgments in Illinois and for an order granting an in-

crease in child support, a modification of Anthony's visitation rights, directing payment of certain arrearages for child support, and for a rule to show cause. Under notice provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), Anthony was served by mail with a copy of the petition and a notice to appear at a hearing in Chicago on October 21, 1980. (Ill. Rev. Stat. 1979, ch. 40, par. 2106 (b)(3).) On October 21, 1980, an agreed order was entered wherein Anthony's attorney was given leave to file an appearance on Anthony's behalf, Anthony was directed to "file his response within 28 days," and the case was continued until December 10, 1980. Anthony filed a special and limited appearance on November 19, 1980, which prayed the court to find that it did not have *in personam* jurisdiction over him because he is not an Illinois resident, and that it further lacked subject matter jurisdiction in that the Missouri court had reserved exclusive jurisdiction over child support and visitation in the supplemental order. An order entered on December 10, 1980, by the circuit court of Cook County, among other things, allowed Myrna to register the foreign decree and expressly found jurisdiction over the parties and the subject matter, and gave Anthony leave to file his general appearance and his response, or otherwise plead, to the modification petition.

On January 9, 1981, Anthony filed a motion to dismiss, again alleging lack of personal and subject matter jurisdiction as well as a bar to Myrna's petition based on section 610 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) in that the petition was brought within two years of the previous custody order. (Ill. Rev. Stat. 1979, ch. 40, par. 610(a).) This motion was orally denied at a January 22, 1981, hearing and a written order entered on January 23, 1981, provided that the special and limited appearance of Anthony's attorney would stand as a general appearance, gave Anthony time to file a reply to Myrna's modification petition, transferred the matter to the presiding judge for setting of a hearing on the merits of the petition, and denominated the order a "final appealable judgment." Anthony's interlocutory appeal to this court was dismissed, as fully discussed at 99 Ill. App. 3d 48, 425 N.E.2d 29.

The couple's oldest child came to Illinois in October 1981, to live with Myrna. The Cook County circuit court granted Myrna temporary custody of this child on January 11, 1982.

Anthony's amended motion filed on October 14, 1981, with the Missouri court, seeking to hold Myrna in contempt of court and for a modification of the custody decree, among other things, was dismissed on Myrna's motion by the Missouri court on March 9, 1982.

Meanwhile, on October 21, 1981, Anthony was served personally

by the sheriff of St. Louis County with copies of all initial pleadings in the instant action as well as a notice to appear in the circuit court of Cook County on November 5, 1981. Anthony's motion to quash this service of summons was denied on April 6, 1982, and a hearing on the merits began on that date, at which Anthony, Myrna, and Anthony's present wife, Rebecca, testified.

The circuit court of Cook County announced its findings orally on June 10, 1982, and in a written order entered on July 2, 1982, in which it awarded permanent custody of the oldest child to Myrna; modified the visitation provisions; increased Anthony's support payments effective June 10, 1982, to $1,600 per month, payable until emancipation as defined by Missouri law; denied Anthony's motion for attorney fees; and set for hearing the matter of Myrna's petition for attorney fees.

A hearing was conducted on October 8, 1982, and testimony was taken from Myrna, Myrna's trial attorney, the attorney who prosecuted her interlocutory appeal, and the latter attorney's law clerk. On December 7, 1982, the circuit court rendered its decision, which was incorporated into an order dated December 30, 1982, awarding Myrna fees of $15,975, of which $9,000 was for the prosecution of the case in chief, $5,575 for the interlocutory appeal and $1,400 for Anthony's noncompliance with discovery.

The appeals and cross-appeal followed.

Anthony contends that the circuit court of Cook County lacked *in personam* jurisdiction over him and was thereby precluded from ordering him to pay increased child support. Before a court can impose upon a defendant an affirmative obligation, such as a duty to pay money, it must first possess and assert jurisdiction over his person. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 101-02, 66 S. Ct. 154, 158; *Pennoyer v. Neff* (1878), 95 U.S. 714, 732-33, 24 L. Ed. 565, 572.) Judgments ordering support of children upon dissolution of marriage, as well as modifications of existing support judgments, constitute such personal obligations necessitating *in personam* jurisdiction. (*Kulko v. Superior Court* (1978), 436 U.S. 84, 91-92, 56 L. Ed. 2d 132, 141, 98 S. Ct. 1690, 1696-97.) In *Kulko* the United States Supreme Court held that personal jurisdiction for purposes of child support requires of the obligor more substantial connections with the forum State than the mere presence in the forum of the obligor's children. (Accord, *Boyer v. Boyer* (1978), 73 Ill. 2d 331, 383 N.E.2d 223.) In *Boyer*, our supreme court held that the "long arm" statute did not extend to impose personal jurisdiction over a noncustodial parent not domiciled in Illinois, where that parent's only

contact with Illinois was the presence in this State of his children and ex-wife. See also *Duncan v. Duncan* (1981), 94 Ill. App. 3d 868, 419 N.E.2d 700.

■ Under this precedent, the circuit court did not have *in personam* jurisdiction over Anthony, a domiciliary of Missouri with no assets in Illinois and whose only contact with this State is the presence here of his children and ex-wife. Neither was the method of service, by certified mail, in accordance with statutory requirements for the acquisition of personal jurisdiction over non-domiciliaries. (Ill. Rev. Stat. 1981, ch. 110, par. 2—203.) Apparently recognizing these problems, Myrna's argument on this issue focuses on Anthony's actions subsequent to the filing of her petition which she claims subjected him to jurisdiction. Resolution of the jurisdictional issue requires further consideration of the factual and procedural dilemma presented by the case *sub judice*.

Section 2—301(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—301(a)) provides that a defendant may make a special appearance to object to the court's assertion of personal jurisdiction over him, so long as such appearance is made prior to filing any other pleading or motion. An appearance not in compliance with this provision constitutes a general appearance and subjects defendant to the court's jurisdiction. The primary concern of this rule is to prevent a party from simultaneously invoking and denying jurisdiction, the inquiry being whether a party has set forth a defense or has taken other steps in the cause which invoked the jurisdiction of the challenged court. (*Supreme Hive Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525, 81 N.E. 533.) In *Lord v. Hubert* (1957), 12 Ill. 2d 83, 145 N.E.2d 77, that inquiry was explicated to mean "any action taken by the litigant which recognizes the case as in court will amount to a general appearance *unless such action was for the sole purpose of objecting to the jurisdiction.*" (Emphasis added.) (12 Ill. 2d 83, 87.) The *Lord* test has been followed in subsequent decisions. *E.g., Hutchinson v. Brotman-Sherman Theatres, Inc.* (1981), 94 Ill. App. 3d 1066, 1075, 419 N.E.2d 530; *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 294, 408 N.E.2d 1014; *Slade v. Bowman* (1977), 49 Ill. App. 3d 242, 246, 364 N.E.2d 922.

Myrna contends that the initial order entered in the case on October 21, 1980, agreed to by Anthony's counsel, was a general appearance by Anthony which rendered ineffective his subsequent special appearance filed on November 19, 1980, relying upon *Welter v. Bowman Dairy Co.* (1943), 318 Ill. App. 305, 47 N.E.2d 739. In *Welter*, the appellate court found that where defendant had obtained an agreed or-

der giving him additional time to file an appearance and an "affidavit of merits," this action constituted a general appearance. Anthony, however, cites *Diaber v. Con/Chem, Inc.* (1978), 57 Ill. App. 3d 918, 373 N.E.2d 805, to support the contrary conclusion, that the instant agreed order did not waive his jurisdictional objection. In *Diaber*, the appellate court found that an order obtained by defendants specially appearing there so as to afford them additional time "to take some appropriate action," was not a general appearance since it was obtained for the purpose of objecting to jurisdiction.

■ The language of the instant agreed order was consistent with Anthony's sole purpose to object to jurisdiction. Although, as in the order in *Welter v. Bowman Dairy Co.*, the subject order granted Anthony's lawyer leave to file his appearance and set the matter for hearing, the *Welter* order went further and directed that defendant there file a pleading analogous to a defense on the merits to a statement of claim. By agreeing to do so, the *Welter* court held, defendant there was precluded from maintaining its intent to object solely to jurisdiction. The instant order required Anthony to "file his response," which more nearly parallels the wording in *Daiber v. Con/Chem, Inc.*, permitting defendant specially appearing there "to take some appropriate action." The foregoing analysis is buttressed by the fact that the next order entered in the instant case, on December 10, 1980, denied Anthony's special and limited appearance objecting to the court's jurisdiction, filed on November 19, 1980, and then gave Anthony leave "*** to file his general appearance" and leave "*** to file his response to or otherwise plead [to] the modification of child custody, child support, and the Rule to Show Cause within 28 days." Clearly, had court or counsel on December 10, 1980, deemed the first appearance of Anthony's counsel on October 21, 1980, to have been other than a challenge to the court's jurisdiction over Anthony, there would have been no occasion to grant him leave anew to file a general appearance and response on the merits to Myrna's pending petition.

Fulfillment of the purposes and policies of the UCCJA invoked in this case does not require personal jurisdiction for the application of its provisions (*Pratt v. Pratt* (R.I. 1981), 431 A.2d 405, 409; *In re Marriage of Hudson* (Ind. App. 1982), 434 N.E.2d 107, 119, *cert. denied* (1983), 459 U.S. 1202, 75 L. Ed. 2d 433, 103 S. Ct. 1187; *In re Marriage of Leonard* (1981), 122 Cal. App. 3d 443, 459, 175 Cal. Rptr. 903, 912; Commissioners' Note, UCCJA sec. 12, 9 Uniform Laws Annotated 150 (1979)), because its subject matter, the "custody determination," expressly "does not include a decision relating to child support or any other monetary obligation of any person." (Ill.

Rev. Stat. 1981, ch. 40, par. 2103.02.) The UCCJA thus has been found applicable for modifying custody and visitation orders (*e.g., In re Custody of Bechard* (1978), 40 Colo. App. 516, 577 P.2d 778; *Bahr v. Galonski* (1977), 80 Wis. 2d 72, 257 N.W.2d 869), but, as in the instant case, not applicable to modify support orders pursuant to its provisions (*e.g., Kioukis v. Kioukis* (Conn. 1981), 440 A.2d 894, 896; *Rodgers v. Rodgers* (Wyo. 1981), 627 P.2d 1381).

■ The custody status of a child or children may be decided *quasi in rem* (*In re Marriage of Hudson* (Ind. App. 1982), 434 N.E.2d 107, 118; Friedman and Marcus, *The Continuing Jurisdiction Dilemma in Interstate Child Custody Disputes*, 70 Ill. B.J. 304, 305 (1982)), and once that jurisdiction is assumed pursuant to the UCCJA, custody and visitation orders can be made and modified without regard to whether either parent has submitted to the court's jurisdiction.

Part of the confusion which developed in the present case can be explained from the fact that although it operates *quasi in rem* UCCJA contains a number of provisions intended to encourage and assure the presence in court of nonresident parties. (See Commissioners' Prefatory Note, UCCJA, 9 Uniform Laws Annotated 114 (1979).) Section 5 provides the parties with notice and the opportunity to be heard. (Ill. Rev. Stat. 1981, ch. 40, par. 2105.) Section 6 provides for notice to out-of-State parties, including return-receipt mail notice (Ill. Rev. Stat. 1981, ch. 40, par. 2106), which was given in the case before us. Section 12 empowers the court to order the appearance of a nonresident party and to order the resident party to pay for the nonresident's travel expenses. (Ill. Rev. Stat. 1981, ch. 40, par. 2112.) Under section 20, an Illinois court can request the court of another State to conduct evidentiary hearings and to order the appearance in Illinois of a party residing in that State. Ill. Rev. Stat. 1981, ch. 40, par. 2120.

The late Professor Brigitte M. Bodenheimer, reporter for the special committee which drafted the UCCJA, found the above-cited provisions to be "superior to technical personal jurisdiction" in promoting the purposes of the UCCJA (Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L. Rev. 1207, 1234 (1969)) and, by encouraging the appearance of all involved parties in the child's best interests, they concomitantly discourage *ex parte* custody determinations. An action, as here, brought pursuant to the UCCJA alone should not subject a nonresident to personal jurisdiction and a resulting imposition of a money obligation contrary to the intended purposes of the UCCJA.

■ Myrna's initial petition alleged jurisdiction pursuant to section 4(a)(1) of the UCCJA, while also pleading sections 512(a) and 601 of the IMDMA for purposes of the support modification (Ill. Rev. Stat. 1981, ch. 40, pars. 512(a), 601, 2104(a)(1)), and prayed for modification of both support and visitation orders. Although she cited the IMDMA in her petition, she initially served Anthony only by mail, thereby failing to subject Anthony to personal jurisdiction, while underscoring her own acknowledgement of the UCCJA as the jurisdictional basis of her petition. The appropriate statute upon which to base an action for support is the Revised Uniform Reciprocal Enforcement of Support Act (URESA), which provides for registration and enforcement of foreign support orders, as well as for hearings in the home States of both obligor and obligee. (Ill. Rev. Stat. 1981, ch. 40, pars. 1201, 1214.) Without leaving Illinois, URESA would have permitted Myrna to file a modification petition in the circuit court of Cook County, thus triggering a hearing in Missouri which could have increased Anthony's child-support obligations. (See *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957.) The purposes and concerns of URESA are both compatible with and distinct from those of the UCCJA, and simultaneous actions could have been initiated under both. See *County of Clearwater, Minnesota v. Petrash* (1978), 41 Colo. App. 143, 145, 589 P.2d 1370, 1371-72.

■ Because the court responded to Anthony's special appearance by entering an order on December 10, 1980, expressly finding that it had both personal and subject matter jurisdiction, his subsequent participation in the proceedings did not waive his jurisdictional objection, since such objection is based on his not being amendable to service of process issued by an Illinois court. (Ill. Rev. Stat. 1981, ch. 110, par. 2—301(c).)[1] Special appearances are normally filed with accompanying motions to quash (*Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 1044, 372 N.E.2d 921); however, no case has been cited or found which holds that failure to do so, as in the present instance, defeats a jurisdictional objection. Myrna's belated attempt to serve Anthony personally on October 21, 1981, was without legal effect. *Kulko v. Superior Court; Boyer v. Boyer.*

■ The principal jurisdictional provision of the UCCJA is section 4, which authorizes the circuit court to make a child custody determination if this State is the "home state" at the time of initiation of the

---

[1]After the instant proceedings had commenced, effective July 1, 1982, Supreme Court Rule 306(a)(1)(iii) authorized a permissive interlocutory appeal to determine such an issue. 87 Ill. 2d R. 306(a)(1)(iii).

proceedings. (Ill. Rev. Stat. 1981, ch. 40, par. 2104(a)(1)(i).) "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months ***." (Ill. Rev. Stat. 1981, ch. 40, par. 2103.04.) Section 15(a)(2) permits modification of a foreign decree provided that section 4 jurisdiction is found, as in the instant case. (Ill. Rev. Stat. 1981, ch. 40, par. 2115(a)(2).) The Schuham children had been residing with Myrna in Illinois for over a year prior to her petition. The circuit court correctly assumed subject matter jurisdiction to modify the custody and visitation provisions of the Missouri decree.

Because the circuit court was without *in personam* jurisdiction over Anthony to enter orders relating to child support and attorney fees awarded to Myrna, the merits of those orders are not reached in this appeal.

For the foregoing reasons, the judgment of the circuit court allowing registration of the Missouri decree and the modification of its visitation and custody provisions is affirmed; the judgment respecting the increase in child support and the award of attorney fees must be reversed and vacated.

Affirmed in part; reversed and vacated in part.

DOWNING, P.J., and PERLIN, J., concur.