261 N.J. Super. 214 (1992)
618 A.2d 854
HOPE SPARROW RIMSANS, PLAINTIFF-RESPONDENT,
v.
AIVARS P. RIMSANS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1992.
Decided December 16, 1992.
*216 Before Judges KING, LANDAU and THOMAS.
Lawrence J. Schempp argued the cause for appellant (Cohen, Shapiro, Polisher, Shiekman & Cohen, attorneys; Mr. Schempp and David Gutin, on the brief, and Laurie H. Polinsky, of counsel and on the brief).
Neal A. Loebel argued the cause for respondent (Camden County Board of Social Services, attorneys; Mr. Loebel, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Aivars P. Rimsans appeals from an August 23, 1991 order of the Family Court which appears superficially to be only a routine confirmation of the order of a Michigan court registered in 1990 pursuant to the registration provision of the Uniform Reciprocal Enforcement of Support Act (URESA) corresponding to N.J.S.A. 2A:4-30.57. The long procedural and factual history of this case, however, has required that we explore several aspects of URESA, including its provision of alternative remedies for enforcement and their implications in light of the statutory language, and New Jersey law and policy. We conclude that the order under review must be reversed.

PROCEDURAL HISTORY
Aivars P. Rimsans (Defendant) and Hope Sparrow Rimsans (Plaintiff) were divorced by decree of the State of Michigan in February of 1975. The divorce decree incorporated an order (the Michigan Order) requiring that the defendant pay child support to respondent until their son attained the age of 18 *217 years or finished high school. At that time the child was four years old. Sometime thereafter, defendant relocated to Illinois.
In April, 1980 an order of support was entered by the State of Illinois on a URESA petition filed to Illinois from the State of Michigan seeking the entry of a support order and collection of arrears that had accumulated under the Michigan order. On April 23, 1980 the State of Illinois entered an order calling for payment of support in the amount of $75 per week plus $25 per week toward accumulated arrears. This order was dismissed on February 26, 1982 when defendant relocated to New Jersey.
On May 17, 1982 a petition for child support was filed by the State of Michigan under URESA. A hearing on the petition was held in the Chancery Division, Family Part in September, 1982. This led to entry of a support order, terms of which are set forth infra, requiring that payments be made through the Middlesex County Probation Department.
The child reached majority on October 10, 1988. On May 15, 1989 the Family Part entered an order terminating payment of support.
On or about July 19, 1989 the State of Michigan submitted an Interstate Child Support Enforcement Transmittal to the State of New Jersey requesting registration of the 1975 Michigan support order, and asserting arrears totaling $22,886.65[1]. This registration was initially dismissed upon the belief that all arrears had been satisfied. However, it appears that there was no formal entry of a dismissal.
The Michigan support order was again tendered for registration in New Jersey. It was registered with the Chancery Division in Camden County on June 14, 1991. Defendant's motion to vacate was denied. An order of confirmation was entered on August 23, 1991, and this appeal followed.

*218 Factual and Procedural Details

The 1975 Michigan order required the defendant to pay child support of $100 per week, until his son reached the age of 18. When defendant relocated to Illinois, the plaintiff received public assistance in Michigan. She assigned her support rights to its welfare department.
The State of Michigan then filed a URESA petition to the State of Illinois seeking entry of an order of support. The Illinois courts entered an order providing for support of $75 per week plus $25 towards arrears, effective May 1, 1980. Defendant made payments under the Illinois order until December, 1981, when he moved to New Jersey. The Illinois order was dismissed on February 26, 1982.
On May 17, 1982 the State of Michigan filed a URESA action in Middlesex County seeking the entry of an order of child support. The Certification of Arrears which accompanied the petition set forth arrearages of $18,200 owed to plaintiff and $3,550 owed to the State of Michigan, plus $85 in fees. Plaintiff now contends the amounts of arrearages were inadvertently transposed and that the State of Michigan was owed the higher amount.
The 1982 petition requested New Jersey to enter an order of support "in the amount of $450 each and every month or in such other amount as the court may deem fair and reasonable; and further requiring payment of the accumulated support arrearages."
A hearing was held before Judge Appleton, now retired, on September 15, 1982. At the hearing, counsel for defendant indicated that the amount of arrearages requested by the State of Michigan was incorrect because the State of Michigan had not properly credited certain payments. Arrears in the amount of approximately $7000 were agreed upon before the court by defendant's counsel and local counsel who presented the Michigan petition. A final order was entered in New Jersey on the same date which provided for the defendant to pay $75 per *219 week towards support and $25 per week towards the $7,000 in agreed arrears which were adopted by the court. No appeal was taken.
Defendant complied fully with the New Jersey URESA order until payments were terminated by the May 15, 1989 order following emancipation of the supported child. Sometime thereafter the appellant moved to Camden County. On July 14, 1989, the State of Michigan registered its 1975 Michigan order and sought the arrears that purportedly accumulated.
The State of Michigan certified arrears of $18,145 due the State of Michigan and $4,741.85 due the plaintiff. The $18,145 amount represents arrearages allegedly due the State of Michigan based upon plaintiff's assignment while she was a welfare recipient from 1976 to December 1980, and prior to the 1982 URESA order. (In 1982, the New Jersey court had determined this amount to be approximately $7,000.) $4,741.85 represents arrearages which accrued between December 1980 and entry of the 1982 New Jersey order, plus an accumulation of the $25 weekly difference between support payments made under the 1982 New Jersey order and the higher payments required under the original Michigan order.
In response to the 1989 registration petition, counsel for the Camden County Board of Social Services first advised defendant that approximately $22,000 remained due to the State of Michigan and the plaintiff. This amount was later adjusted to $11,794.85 when the Camden County counsel determined that proper credit for the arrearages paid pursuant to the 1982 New Jersey order had not been made by Michigan. Then, on September 26, 1990, counsel for Camden County Board of Social Services informed the State of Michigan and defendant that the URESA petition for collection of arrearages was dismissed in full as a result of the defendant's compliance with the 1982 New Jersey URESA order. What purports to be a trial court order of dismissal accompanied this correspondence.
*220 In June of 1991, the State of Michigan again registered in Camden County the 1975 Michigan order and the arrears allegedly due thereunder. Defendant's counsel filed a motion to vacate the registration. A hearing was held on August 23, 1991, at which time the court determined that the 1989 registration was never formally dismissed[2]; that the action taken by the court in 1982 was in error and did not supersede the original Michigan arrearages order nor prevent the continued build-up of arrearages against the defendant; that Michigan had the right under URESA to register the arrears that accumulated under the Michigan order; and that a New Jersey court was without jurisdiction to entertain appellant's contention that the amount of arrearages in the affidavits included with the registration petition did not provide credit for past amounts paid.[3] From this order defendant appeals.

Law
We consider first the effect of the responding state's unappealed 1982 URESA order (the New Jersey order), duly entered under the civil enforcement section of URESA, upon an additional URESA action initiated by Michigan eight years later under a different section of URESA, which sets forth the registration option.
In 1950, the National Conference of Commissioners on Uniform State Laws and the American Bar Association promulgated *221 URESA. In 1968 substantial revisions were made in the Uniform Act. See Uniform Reciprocal Enforcement of Support Act, 9A U.L.A. 643, 647 (1979).
New Jersey adopted the 1968 revisions to the Uniform Act known as the "Revised Uniform Reciprocal Enforcement of Support Act", see N.J.S.A. 2A:4-3.25. For ease of reference, we have employed the N.J. Statutory designations, which do not materially differ from the Michigan statute for purposes relevant to this discussion. M.S.A. § 25.225 et seq. [M.C.L.A. § 780.151 et seq.] The purpose of URESA is to improve and extend, by reciprocal legislation, enforcement of duties of support owed by an obligor in one state to an obligee in another state. URESA provides three mechanisms to accomplish its goal: (1) a civil enforcement remedy; (2) a criminal extradition remedy, and; (3) the registering of a foreign order. This appeal concerns application and interrelationship of the civil enforcement and registration remedies.
The civil enforcement mechanism created by the revised act is a two-part procedure designed to enable the obligee to enforce a support obligation upon the relocated obligor without having to leave the state of residence.
An obligee commences the proceeding by filing a petition that alleges facts constituting a duty of support in the appropriate court of the obligee's state of residence (the initiating state). N.J.S.A. 2A:4-30.35, 30.38. The initiating court reviews this petition and determines (1) whether the petition alleges facts which set forth a duty of support, and (2) whether a court of another state (the responding state) may obtain jurisdiction over the respondent. N.J.S.A. 2A:4-30.38. Once this determination is made, the initiating court certifies and forwards three copies of the petition and certificate and one copy of the initiating state's uniform act to the appropriate court in the responding state. Id. The responding court dockets the case and notifies the county welfare agency of its action. The county welfare agency then must prosecute it "diligently." *222 N.J.S.A. 2A:4-30.41. After a hearing, the responding court makes the evidentiary determination whether a duty of support exists. If such a duty is found to exist, the responding court may enter an order of support. N.J.S.A. 2A:4-30.46.
Another procedure available under URESA is registration of a foreign support order which has already been entered in the initiating state. N.J.S.A. 2A:4-30.57. When the clerk of the court in the responding jurisdiction receives such documents, the foreign order is filed in a registry of foreign support orders. N.J.S.A. 2A:4-30.58. At the time of filing, the clerk must also give the obligor notice of the registration by certified or registered mail. N.J.S.A. 2A:4-30.60. The obligor usually has 20 days within which to request that the registration be vacated. If the obligor does not contest registration or fails to prevail at a hearing, the registered order is confirmed. N.J.S.A. 2A:4-30.61. Pursuant to N.J.S.A. 2A:4-30.61a, a registered foreign support order is to be treated in the same manner as a local support order entered by this state. It is subject to the same defenses and proceedings to reopen, vacate or stay as a support order of this state and may be enforced and satisfied in a similar manner.
It is generally recognized that a responding court may enter prospectively a support order amount different (lesser or greater) from that previously entered in the initiating state. A responding court under URESA also has jurisdiction to determine the amount of arrears and enter judgments for their payment. N.J.S.A. 2A:4-30.26 (duty of support includes "duty to pay arrearages of support past due and unpaid"); Koon v. Boulder County Dep't. of Social Services, 494 So.2d 1126 (Fla. 1986); Swan v. Shelton, 469 S.W.2d 943 (Mo. App. 1971); Taylor v. Vilcheck, 745 P.2d 702, 705 (1987); State of Wash. ex. rel. Gibson v. Gibson, 800 P.2d 1011 (Hawaii App. 1990).
It is also generally recognized that when such orders are entered by a responding state, they do not affect the validity or enforceability in the initiating state of judgments there entered. *223 Banks v. Banks, 221 N.J. Super. 282, 285, 534 A.2d 419 (App. Div. 1987); N.J.S.A. 2A:4-30.53. In Banks, defendant appealed from a post-judgment order in a divorce proceeding. The post-judgment order obligated defendant to convey to plaintiff his one-half interest of the marital home located in New Jersey to fully satisfy his arrears and liabilities under the 1984 New Jersey divorce judgment. The Banks defendant argued that a 1985 responding-state URESA order entered in Tennessee reduced his ongoing support obligation and total arrears then owed. We held that the intervening Tennessee URESA order modified the New Jersey support judgment solely for the purpose of enforcement in Tennessee, without affecting the validity or enforceability of the greater judgment as ordered in New Jersey. Id. at 285-86, 534 A.2d 419.
Michigan courts have held that Michigan, as an initiating state, is not bound by intervening URESA orders of responding states when calculating the arrearages due under an original judgment of support. However, it will give credit to the support payments made under the responding state orders. McMath v. McMath, 174 Mich. App. 576, 436 N.W.2d 425, 429 (1989).
Does URESA or any principal of comity or full faith and credit require that we effectively overturn the unappealed 1982 New Jersey order, complied with for nearly eight years, in favor of Michigan's second effort to enforce its 1975 order in New Jersey, this time by using the registration alternative? We hold that the unappealed New Jersey order must here prevail.
Defendant argues that as he complied fully with the 1982 New Jersey order, URESA can impose no further enforceable duty of support upon him. He also argues that in light of plaintiff's failure to timely challenge the 1982 New Jersey order, and his meticulous compliance, it would be inequitable to allow plaintiff to choose a new route to enforce the 1975 Michigan order in New Jersey by way of registration after so many years.
*224 Plaintiff argues that while the 1982 New Jersey order set support payments and arrears differently from the Michigan order, it miscalculated the arrears then due, leaving prior-1982 arrearages still owed on the Michigan order. She also argues that the arrears under the Michigan order, requiring support payments of $100 per week, continued to accrue, subject to credit for the $75 weekly amounts paid by appellant pursuant to the New Jersey order.
Plaintiff thus contends that she can pursue separately and independently both the URESA civil enforcement remedy and the registration remedies within this State, irrespective of a prior adjudication under one of those courses of action.
She relies in part upon the language of N.J.S.A. 2A:4-30.27 and N.J.S.A. 2A:4-30.56. Section 30.27 provides:
The remedies herein provided are in addition to and not in substitution for any other remedies.
Section 30.56 provides:
If the duty of support is based upon a foreign support order, the obligee has the additional remedies provided in the following sections.
One "additional remedy" referred to in Section 30.56 is registration of the foreign support order.
Plaintiff also claims that the anti-supersession section of URESA supports her argument:
A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.

[N.J.S.A. 2A:4-30.53; see M.S.A. 25.225(21)].
We see no indication in this language that the Legislature intended that obligees have the right separately to pursue, in successive actions, both the enforcement and registration remedies provided in URESA. Indeed, we have held in an analogous case that once New Jersey has fixed by order the amount of support arrears, and there has been compliance, *225 there is no further enforceable duty to impose upon the obligor. Essex Cty. Adjuster v. Brookes, 198 N.J. Super. 109, 112, 486 A.2d 875 (App.Div. 1984). The Legislature did not indicate that the registration remedy is in "addition to" the civil enforcement remedies, but that an obligee has the additional "remedy" of registration. Since the registration remedy was a subsequent addition to the URESA statute, we hold that remedy to be simply one "additional remedy" on the menu from which an obligee may choose.
This interpretation is not without support. According to William Brockelbank, chairman of the Committee on URESA for the National Conference of Commissioners on Uniform Statutes:
[t]he remedies of this part [Registration of Foreign Support Orders] are in addition to the other remedies provided in the Act[* *]. This means, of course, that plaintiff has a choice.
[W. Brockelbank, Interstate Enforcement of Family Support 80 (2d ed. 1971)].
Plaintiff may not successively avail herself of both remedies, thereby collaterally attacking without appeal the support order lawfully issued in New Jersey as responding state under URESA. The 1982 order was final and appealable, and is now res judicata in this State, even if initially erroneous. See Hendricks v. Ross, 232 N.J. Super. 243, 248, 556 A.2d 1267 (App. Div. 1989).
This was not a R. 4:50-1 application for relief from final judgment. However, even if so formulated, it would not have survived equitable analysis under that Rule because of plaintiff's laches, and defendant's reliance and diligent compliance. Moreover, a contrary ruling would undermine the delegation under URESA (N.J.S.A. 2A:4-30.28 and .46) to the responding state court of the prerogative to determine the duty of support when the civil enforcement provision has been invoked.
Although the initiating court determines whether there are sufficient facts from which it may be determined that the respondent owes a duty of support, (N.J.S.A. 2A:4-30.38), the *226 initiating court has no jurisdiction to fix the liability of the person owing the duty of support in the responding state. Pfueller v. Pfueller, 37 N.J. Super. 106, 108, 117 A.2d 30 (App.Div. 1955).
In City and Council of San Francisco v. Juergens, 425 So.2d 992, 995-96 (La. App. 1983) the Louisiana court found that under its URESA statute, the state initiating the proceedings does not have the right to determine the actuality of the obligation, the amount owed, or arrearages, as this is a prerogative of the responding state.
The importance of this prerogative of the obligor's state to determine the merits of a support action cannot be lightly regarded. By this process, the obligor is certain that his rights will be adjudicated with proper due process of law, that the obligee is protected from a recalcitrant obligor's avoidance of support duties by fleeing from the jurisdiction.
Id. at 995-96.
Our conclusion that this State's responding court determination of the duty of support must be respected harmonizes with the criminal enforcement section of URESA. N.J.S.A. 2A:4-30.30 provides that a state may demand the governor of another state to surrender a person charged with failing to provide support. However, such governor may decline to honor the demand where other URESA proceedings were initiated in this State and where the obligor has complied with its support order. N.J.S.A. 2A:4-30.30c.
Few cases have dealt with the issues presented on this appeal. Most address the issue of whether a responding state's URESA order superseded the original support order of the initiating state. These courts have generally found that the responding state's intervening URESA order did not supersede the original order and thus an action outside of URESA on the original order was not barred in the initiating state. See Reciprocal Enforcement Law  Support Orders, 31 ALR4th *227 347 (1984)[4]; In Re Marriage of Gifford, 152 Ill. App.3d 422, 105 Ill.Dec. 527, 504 N.E.2d 812 (1987); Banks v. Banks, supra.
In D.L.M. v. V.E.M., 438 N.E.2d 1023 (Ind. App. 1982), the court ruled that a mother's second URESA action for child support within that responding state was barred by res judicata where there was a prior URESA action within that same state which determined that there was no duty of support on the part of the father because paternity was not established. Id. at 1026. The court reasoned that the initial responding court had jurisdiction to reach the issue of paternity in its determination of the obligor's duty of support. The mother argued that the URESA anti-supersession clause deprived the responding court of jurisdiction because of the responding court's determination that the daughter was not the father's child superseded the prior Illinois support order. The court found that the anti-supersession section did not deprive the responding court of jurisdiction to render its first judgment. The court stated:

*228 This section has been interpreted to mean that the initiating state is not required to grant full faith and credit to the support orders of a responding state when the initiating state considers a subsequent petition for modification or calculates arrearages due under the divorce decree. [citations omitted]. Support orders of this state can be modified upon a proper showing ... However such modifications do not supersede the original order in proceedings before the initiating court.

Id. at 1029 (emphasis supplied).
The court further decided that the responding court was not obligated to give the initiating court's determination of paternity full faith and credit. Moreover, the court determined that even if the responding court were so obligated, its failure to do so would have been a mere error of law which would have required the mother to seek correction by direct appeal. Id.
Similarly, in Brookins v. Brookins, 257 Ga. 205, 357 S.E.2d 77 (1987), a former wife brought a second URESA action against her ex-husband to recover alleged child support arrears under their original divorce decree. The court found that res judicata would ordinarily apply where, as here, the issue of arrears was put in issue and resolved before the responding court.
In Pace v. Pace, 222 Va. 524, 281 S.E.2d 891 (1981), the Virginia court barred a mother's non-URESA motion to enforce a Missouri order finding the father $3,982 in arrears under the original divorce decree. The Virginia court found that an intervening in-state URESA proceeding which determined that the father owed no obligation of support, could not be collaterally attacked by the mother's attempt to sue upon the foreign divorce order. "The proper forum for challenging the errors in the Virginia URESA proceeding would have been an appeal from the trial court's order...." Id. 281 S.E.2d at 893. The court concluded that giving effect to the original decree to the extent that the order disagrees with the URESA order on the amount of arrearages would "be giving greater force to a sister-state than we give to the judgments of our own courts." (emphasis supplied). Id. at 894.
*229 Similarly, in our case, it is undisputed that defendant has fulfilled his payment obligations under the New Jersey order. He therefore has no further obligation of support under the laws of our state. To allow Michigan now to register its original 1975 decree would give Michigan's order greater force than our own, in contravention of N.J.S.A. 2A:4-30.61a:
Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner.[5]
We find this provision of the statute, and the reasoning of above line of cases persuasive, but recognize that the imperfect statutory language in URESA has given rise to conflicting views. In Westberry v. Reynolds, 134 Ariz. 29, 653 P.2d 379 (App. 1982), the mother brought a URESA action in 1979 seeking arrearages that accumulated under the original divorce decree entered in 1965. The father argued that a prior URESA order entered in 1977 was res judicata as to the amount of arrearages owed up to that time. The court disagreed and placed reliance upon the anti-supersession section of URESA. Id. 653 P.2d at 381-82.
*230 In Stephens v. Hamrick, 86 N.C. App. 556, 358 S.E.2d 547 (1987), the mother sought registration of a foreign support order in order to collect the deficiency between what the father paid under an intervening URESA order which was complied with, and the original foreign support order. The trial court dismissed the mother's registration petition holding, in part, that by accepting payments under the responding state's URESA order for eighteen years, she abandoned any rights to subsequently enforce the original support order. The appellate court reversed, finding that the trial court's failure to enforce the registered support order violated the Full Faith and Credit clause of the United States Constitution. Id. 358 S.E.2d at 549.[6]
We hold that D.L.M. and Brookins correctly interpret URESA's anti-supersession clause. N.J.S.A. 2A:4-30.53 precludes the responding state's order from modifying or superseding the *231 initiating state's initial divorce decree as it exists within the initiating state. However, this clause should not be read to allow an initiating state to modify or supersede our unappealed support order by later registering its own order within our borders. As previously noted, this would constitute an improper and untimely collateral attack upon the New Jersey URESA order. We add that this technique also conflicts with the policies expressed in our entire controversy doctrine and R. 4:30A[7], R. 5:1-1. See Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989).
Our interpretation of URESA is supported by the statute's specific provision for the use of the appellate process. Both the Michigan and New Jersey URESA statutes provide for direct appeal by the Attorney General of erroneous support orders issued in another state.
M.S.A. 25.225(25) provides:
If the attorney general or director of social services is of the opinion that a support order is erroneous and presents a question of law warranting an appeal in the public interest, the attorney general may, or the director of social services may request the attorney general to do either of the following:
(1) Perfect an appeal to the proper appellate court if the support order was issued by a court of this state.
(2) If the support order was issued in another state, cause the appeal to be taken in another state.
N.J.S.A. 2A:4-30.55 provides:
If the Attorney General is of the opinion that a support order is erroneous and presents a question of law warranting an appeal in the public interest, he may:
a. Perfect an appeal to the proper appellate court if the support order was issued by a court of this State, or
b. If the support order was issued in another state, cause the appeal to be taken in the other state. In either case expenses of appeal may be paid on his order from funds appropriated for his office.
In our case, the 1982 responding court did not exceed its jurisdiction in setting the arrearages due at that time at approximately *232 $7000. Our responding court's decision was not an attempt to modify the amount of arrearages owed under the original divorce decree, rather it was an attempt to determine the amount owed. It was well within the responding court's jurisdiction to determine the amount of the arrears owed and enter an order of support in consideration of factors at that time. Furthermore, the arrearage amount set by the court was not contested by counsel for the State of Michigan.
Respondent had a choice of remedies under URESA. She initially chose to utilize the civil enforcement remedy provided by URESA. If respondent was unhappy with the order or found it erroneous there should have been a direct appeal as provided for in URESA. N.J.S.A. 2A:4-30.55b; M.S.A. 25.-225(25).

Conclusion
The August 23, 1991 order of confirmation is reversed.
NOTES
[1] Although URESA permits the initiating state to enter its own judgment for arrears, and then to seek enforcement of such judgment, this procedure was not followed.
[2] The trial court judge found that the initial dismissal order was not signed by him or authorized by him. As such, it appears to have constituted a "void" judgment of dismissal and would not have to be appealed. See 46 Am.Jur.2d Judgments § 48-49 (1969).
[3] The latter conclusion was plainly erroneous. Confirmation of a registered support order does not include confirmation of the registered arrearage affidavit. The amount of arrearages were not rendered to judgment in Michigan and the court is not obligated to confirm the amounts alleged to be due in accompanying affidavits. See Chapman v. Chapman, 205 Cal. App.3d 253, 252 Cal. Rptr. 359 (5th Dist. 1988). In light of our opinion, however, it is not necessary to more fully explore this aspect of the confirmation process.
[4] However, a minority of courts have found that a respondent court's reduction of a husband's support obligation took precedence over the previous order issued in the divorce action. For example, in Sullivan v. Sullivan, 98 Ill. App.3d 928, 54 Ill.Dec. 207, 424 N.E.2d 957 (1981), the court found that a URESA responding court's reduction of a husband's support obligation took precedence over the previous order issued in the divorce action and was entitled to full faith and credit.

The Circuit Court ruled that the responding court had jurisdiction to modify the previous support order, and the responding court's order took precedence over the previous order issued in the divorce action. Since the husband made payments as required by the responding court's order, he was not in arrears. The reviewing court affirmed.
It noted that any objections concerning the responding court's modification should have been appealed in Ohio and not attacked collaterally in Illinois. The Ohio responding court order was entitled to full faith and credit despite the Ohio court's failure to observe the same principle with respect to the previous Illinois judgment.
See also, Jaynes v. Black, 655 S.W.2d 493, 494 (Ky.App. 1983) (common-law judgment action sought by wife for alleged arrears was barred by res judicata where prior URESA action disposed of issue.)
[5] A plain reading of the statute would indicate that our State will treat a foreign support order as one of our own and thus subject it to our own law. Therefore, registration and enforcement of the Michigan order would not have survived equitable considerations as we observed supra. This interpretation of section 30.61 is consistent with interpretations of similar sections elsewhere. See Greebel State ex. rel. v. Endsley, 269 Ind. 174, 379 N.E.2d 440 (1978) (once court confirms a foreign support order, such order has the same effect and may, under URESA, be enforced as if originally entered in Indiana); In re Marriage of Aron, 224 Cal. App.3d 1086, 274 Cal. Rptr. 357 (1st Dist. 1990) (upon a foreign support order's registration, a California court could entertain a support obligor's modification motion, a normal defense under California law); Hartley v. Hartley, 465 So.2d 592, 593 (Fla.App. 1985) (URESA registered support order can be modified upon substantial change in circumstances); Contra Costa County Ex Rel. Tuazon v. Caro, 802 P.2d 1212 (Hawaii App. 1990) affd., 72 Haw. 1, 802 P.2d 1202 (father entitled to prove essential elements of waiver, estoppel, or laches in defense to enforcement of registered decree on arrearages); see also Helmick v. Helmick, 436 So.2d 1122, 1131 (Fla.App. 1983) (Cowart, concurring specially) and cases cited therein.
[6] We have recognized that past due installments under a foreign decree were entitled to full faith and credit if the right to them is absolute and vested in the foreign jurisdiction. See Paramore v. Paramore, 32 N.J. Super. 491, 494, 108 A.2d 455 (App.Div. 1954). Michigan courts hold that past due unpaid support payments are not fixed and entitled to full faith and credit by a sister state:

Generally, the moving party petitions to have any arrearage reduced to a money judgment, at which time the court ascertains whether the original award or any arrearage should be modified. VanHouten v. VanHouten, 159 Mich. App. 713, 716; 407 N.W.2d 69 (1987). The amount owed is then fixed and not subject to modification. Corley [v. Corley], supra, [79 Mich. App. 499] p. 502 [261 N.W.2d 65 (1977)]. It is only when the amounts due or support are final and fixed that the courts of a sister state will recognize and enforce the judgment under full faith and credit commanded by U.S. Const., art. IV § 1. Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137; 89 L.Ed. 82 (1944); Talbot v. Talbot, 99 Mich. App. 247, 252; 297 N.W.2d 896 (1980).
[McMath v. McMath, 174 Mich. App. 576, 436 N.W.2d 425, 428 (Mich. App. 1989)].
In our present case, respondent did not register arrearages which were reduced to a money judgment and fixed under Michigan law. Thus we need not consider whether full faith and credit must be given to a Michigan money judgment which conflicts with a New Jersey judgment previously entered. See supra, note 3.
[7] R. 4:30A provides:

Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.