*In re* MARRIAGE OF LINDA BUCHANIO, n/k/a Linda Schneider, Petitioner-Appellee, and CHARLES BUCHANIO, Respondent-Appellant.

First District (4th Division)    No. 1—92—4496

Opinion filed May 26, 1994.

Carponelli & Krug, of Chicago (Stephen P. Carponelli, Stephanie L. Matthews, and James V. Noonan, of counsel), for appellant.

Grund & Nadler, of Chicago (David I. Grund and Richard S. Zachary, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The marriage of Linda and Charles Buchanio was dissolved by an out-of-State judgment, after which Linda moved to Illinois with the parties' three children. Several years later, Linda filed petitions in the circuit court of Cook County seeking to modify visitation arrangements, to increase Charles' child support payments, and to hold Charles in contempt for failing to pay the children's outstanding medical bills. The petitions were granted, and Charles now appeals, raising the following issues: (1) whether the court erred in finding that it had *in personam* jurisdiction over him; and (2) whether the court acted improperly in vacating an earlier dismissal for want of prosecution.

A judgment dissolving the marriage of Charles and Linda Buchanio was entered in Lebanon County, Pennsylvania, on September 13, 1983. The dissolution decree granted Linda custody of the parties' three minor sons and required Charles to provide the boys' health insurance coverage and pay any medical or dental bills not covered under his policy. In January of 1984, Linda and the boys moved to Illinois, and Linda initiated proceedings to enroll the Pennsylvania dissolution judgment in this State. Although Charles was personally served with notice of the enrollment proceedings, he failed to appear at the hearing. The Pennsylvania judgment was enrolled in Illinois on January 17, 1986.

On April 22, 1986, Linda filed a petition in the circuit court of Cook County for modification of visitation. Charles moved to dismiss the petition for lack of jurisdiction under section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), citing a prior visitation ruling made by the Pennsylvania court and an appeal then pending in that State. In conjunction with his motion to dismiss, Charles served Linda with notice for her deposition and sought leave to depose experts upon whom she had relied in her modification petition. The court ultimately reserved ruling on Charles' motion, and there was no further activity in the Illinois case for nearly two years.

On March 21, 1989, the circuit court entered an order noting the registration of the Pennsylvania dissolution decree and striking the case from the trial call as "completed." On January 16, 1990,

however, an order was entered dismissing the "complaint for dissolution" for want of prosecution. Upon learning of this erroneous order, Linda sought vacatur of the dismissal on August 21, 1991, with a "Motion to Correct Clerical Error." The motion indicated that the case had accidentally appeared on the January 1990 status call as a prejudgment dissolution proceeding, and that when no one appeared for the status hearing, the case had been dismissed. Finding that the dismissal was entered in error, the circuit court vacated it on August 21, 1991, and reinstated the case on the post-decree call.

On April 2, 1992, in the circuit court, Linda filed petitions for (1) modification of child support, (2) a new visitation schedule, and (3) a rule to show cause as to why Charles should not be held in contempt for his failure to pay the boys' uninsured medical and dental bills (hereinafter rule to show cause). In response to these petitions, Charles filed a special appearance and motion to dismiss for lack of jurisdiction. The motion contained no allegations regarding the circuit court's *in personam* jurisdiction; instead, it consisted merely of statements regarding Linda's submission to Pennsylvania jurisdiction and that State's alleged continuing jurisdiction over visitation and support matters in light of its prior rulings on these issues.

In response to the motion to dismiss, Linda disputed Charles' challenge to subject matter jurisdiction, and additionally asserted that the circuit court had personal jurisdiction over Charles because he had generally appeared during the April 1986 proceedings on her petition to modify visitation.

In his reply memorandum, Charles argued that the court lacked subject matter jurisdiction over all three of Linda's petitions under the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1989, ch. 40, par. 2101 *et seq.*). In addition, Charles alleged for the first time that the court lacked personal jurisdiction over him due to his insufficient contacts with this State. Charles's prayer for relief requested that "all matters pending in the instant action be dismissed for lack of jurisdiction."

At a hearing on the motion to dismiss, Charles' arguments again pertained to subject matter jurisdiction, and also to collateral estoppel. The court subsequently entered an order requiring the parties to brief several points, including Pennsylvania statutory issues; the vacatur of the January 1990 dismissal for want of prosecution; the status of Charles' appearance in 1986; and an alleged failure to give proper notice to "parties" regarding motions filed and orders entered after April 25, 1986.

On July 2, 1992, the judge entered an order in which he, in relevant part: (1) found that Charles had entered a general rather than

special appearance, and that the court had personal jurisdiction over him and subject matter jurisdiction over the visitation issues; (2) reversed the vacatur of the dismissal for want of prosecution on the basis that it had been entered *ex parte*; and (3) granted Charles leave to respond to Linda's motion to vacate the dismissal for want of prosecution.

The parties filed their respective memoranda addressing the merits of the motion to vacate the dismissal for want of prosecution. Charles' memorandum recited that it was not intended as a personal appearance, but was to preserve his opportunity to object to the erroneous reinstatement of this action. A hearing was held, and on July 21, 1992, the court entered an order vacating the dismissal for want of prosecution finding that it was a "nullity" and that it had no effect on jurisdiction. The order also granted Charles 21 days to respond to Linda's pending petitions for a rule to show cause and to modify visitation and child support.

When Charles subsequently failed to respond to the petitions, Linda filed a motion for default under Code section 2—1301(d) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1301(d)). At the prove up hearing, counsel for Charles was present, but stated that she was appearing "not substantially to participate *** but just to observe." At the conclusion of Linda's evidence on the petition for a rule to show cause, Charles' counsel made the following statement:

> "I am not attempting to object to the evidence that they have put on, but my response is that there isn't any basis for a rule or for a finding of willfulness based on the petition and the prior objections by [Charles] on the basis of lack of jurisdiction of this court."

Following the hearing, the court entered an order finding Charles in default, modifying visitation arrangements, holding Charles in contempt for failing to pay the uninsured medical bills, and mandating that he make those payments. The order also increased Charles' monthly child support obligations commensurate with his increased earnings and the children's needs. Charles moved to vacate this order alleging that it did not accurately represent the court's findings. Hearings were held on this motion at which Charles argued various discrepancies between the written order, the evidence presented, and the court's findings at the hearing. The order was subsequently amended to reflect the court's actual findings and orders.

Charles then filed the instant appeal, in which he asserts that the portions of the order holding him in contempt and increasing his support payments are void because they were entered without

personal jurisdiction over him. In response, Linda contends that Charles submitted to Illinois jurisdiction when he generally appeared in the 1986 visitation proceedings.

■ Judgments ordering or modifying child support constitute affirmative obligations requiring *in personam* jurisdiction over the person against whom they are imposed. (*Kulko v. Superior Court* (1978), 436 U.S. 84, 91-92, 56 L. Ed. 2d 132, 141, 98 S. Ct. 1690, 1696-97; *Boyer v. Boyer* (1978), 73 Ill. 2d 331, 383 N.E.2d 223.) Under Code section 2—301(a), a litigant may file a special appearance to object to the assertion of jurisdiction over him as long as this appearance is made "[p]rior to filing any other pleading or motion." (Ill. Rev. Stat. 1991, ch. 110, par. 2—301(a).) An appearance not in compliance with this section is a general appearance and operates to subject the litigant to the court's jurisdiction. (Ill. Rev. Stat. 1991, ch. 110, par. 2—301(a).) It is well settled that " 'any action taken by the litigant which recognizes the case as in court will amount to a general appearance *unless such action was for the sole purpose of objecting to the jurisdiction*' " over his or her person. (Emphasis in original.) (*In re Marriage of Schuham* (1983), 120 Ill. App. 3d 339, 344, 458 N.E.2d 559, quoting *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77.) An appearance raising any defense other than personal jurisdiction is a general appearance, regardless of whether it is designated as a "special" appearance. (*In re Marriage of Kelso* (1988), 173 Ill. App. 3d 746, 750, 527 N.E.2d 990.) In particular, a motion challenging the court's subject matter jurisdiction constitutes a general appearance (*In re Marriage of Stafeil* (1988), 169 Ill. App. 3d 630, 633-34, 523 N.E.2d 1003; *Sheehan v. Holzman* (1964), 52 Ill. App. 2d 88, 201 N.E.2d 548), as does a motion to dismiss based upon the pendency of a related action between the same parties in another forum. (*Loss v. Loss* (1967), 80 Ill. App. 2d 376, 224 N.E.2d 271.) Where such motions are made, a general appearance will be found even though a motion contesting personal jurisdiction is made in conjunction with them. *J.C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 449 N.E.2d 188; see also *Mauro v. Peterson* (1984), 122 Ill. App. 3d 466, 461 N.E.2d 564.

Charles responded to Linda's three petitions with a special appearance and "motion to dismiss" under "section 2—619." Otherwise devoid of any reference to authority, the motion consisted merely of general allegations as to prior visitation and support determinations rendered in Pennsylvania. Charles alleged nothing regarding personal jurisdiction until his reply brief, and even there, combined it with his objections regarding Illinois' subject matter jurisdiction, which were the focus of his motion. At no point did Charles

take any action "for the sole purpose of objecting to" the court's personal jurisdiction over him in the support or contempt matters. Accordingly, he has waived those challenges. See *J.C. Penney*, 114 Ill. App. 3d 644, 449 N.E.2d 188.

At oral argument, Charles conceded that his motion to dismiss challenged subject matter and not personal jurisdiction; however, he argued that the motion was directed solely towards Linda's visitation petition which, having been brought pursuant to the Uniform Child Custody Jurisdiction Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2101 *et seq.*), could have been validly decided regardless of whether or not the court had personal jurisdiction over him.

■ We agree with the latter premise; the Act applies to matters of child custody and visitation and does not contemplate determinations relating to child support or any other monetary obligation. (*In re Marriage of Mobley* (1991), 210 Ill. App. 3d 936, 937, 569 N.E.2d 323; *Schuham*, 120 Ill. App. 3d at 345.) As such, its policies and purposes may be effectuated without *in personam* jurisdiction, and as long as certain other jurisdictional criteria are met, a court may grant relief under the Act despite a lack of personal jurisdiction over one of the parents. (Ill. Rev. Stat. 1989, ch. 40, par. 2104; *Schuham*, 120 Ill. App. 3d at 345-346; *Mobley*, 210 Ill. App. 3d at 937-38.) In keeping with this rule, this court has held that a party may, without submitting to the general jurisdiction of the court, assert a challenge to subject matter jurisdiction over a proceeding under the Act, such as visitation. (*In re Marriage of Bueche* (1990), 193 Ill. App. 3d 594, 599, 550 N.E.2d 48.) This is unavailing to Charles, however, because his motion clearly sought dismissal of the support and contempt petitions as well as the modification petition. Moreover, Charles' consent to jurisdiction was further evidenced when he, before obtaining a ruling on the question of personal jurisdiction, complied with the court's order to brief issues of Pennsylvania law and the vacatur of the prior dismissal for want of prosecution. These were actions which clearly recognized the case as being in Illinois court and were a submission to the court's *in personam* jurisdiction.

■ Charles relies upon *In re Marriage of Schuham*, 120 Ill. App. 3d 339, for the argument that, in a proceeding brought solely under the Act, a general appearance to contest subject matter jurisdiction does not constitute a submission to *in personam* jurisdiction. (*Schuham*, 120 Ill. App. 3d at 346.) Unlike the instant case, however, the personal jurisdiction challenge in *Schuham* was addressed prior to and distinct from the contentions as to subject matter jurisdiction under the Act. (*Schuham*, 120 Ill. App. 3d at 344-45; see Ill. Rev. Stat. 1991, ch. 110, par. 2—301(a).) After rejecting the father's personal ju-

risdiction claim, the court in *Schuham* gave him leave to file his general appearance. Conversely, in the instant case, the court specifically found that Charles' initial appearance was general rather than special in nature, and Charles' actions after the motion continued to acknowledge the case as being in court. (See *Schuham*, 120 Ill. App. 3d at 345.) Accordingly, his reliance on *Schuham* is not persuasive.

Charles expends much effort attempting to explain his actions following the 1986 petition, claiming that the finding of personal jurisdiction was based upon those actions rather than his appearance in 1992. As indicated above, his actions in 1992 were sufficient to vest the court with jurisdiction to enter the prospective rulings (see *In re Marriage of Verdung* (1989), 126 Ill. 2d 542, 547, 535 N.E.2d 818), which are at issue in this appeal. Although the exact basis for the trial court's jurisdictional finding is unclear, this court may sustain it on any proper grounds found in the record, regardless of those employed by the trial court. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37.) Thus, regardless of whether his 1986 conduct was a general appearance, jurisdiction in 1992 was proper.

■ Charles' final contention pertains to the vacatur of the January 16, 1990, dismissal for want of prosecution. On that date, this case had erroneously appeared on the trial call for prejudgment dissolution complaints, and when the parties failed to appear for a status hearing, the court dismissed it for want of prosecution. Finding that this was erroneous because there was no prejudgment proceeding pending, the court vacated the dismissal in August of 1991. It learned in July of 1992, however, that the vacatur had been entered *ex parte*; thus, the court reopened the dismissal issue, determined again that it was in error, and vacated it on July 21, 1992. Charles now maintains that the July 1992 vacatur of the dismissal was error.

We note initially that Charles has cited no applicable authority in support of this alleged error; accordingly, he has waived the argument on appeal. (134 Ill. 2d R. 341(e).) In any event, there was no error in the court's course. It is beyond question that a valid final judgment dissolving the Buchanios' marriage was entered in Pennsylvania on September 13, 1983; thus, the January 1990 dismissal had no legal significance because there were no pending prejudgment proceedings capable of being dismissed. Thus, vacatur of the mistaken order was proper both in 1991 and 1992.

Assuming, *arguendo*, that the dismissal order did operate to dismiss this entire proceeding, it would still have no effect upon the petitions at issue here. Indeed, the only matter "pending" before the circuit court in January of 1990 was the order registering the

Pennsylvania dissolution judgment under section 511(c) of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1989, ch. 40, par. 511(c).) Such registrations, however, are not in and of themselves causes of action and do not adjudicate the rights of parties. (*In re Marriage of Nelson* (1984), 128 Ill. App. 3d 635, 636-37, 470 N.E.2d 627.) Rather, they are merely procedural devices by which a party may seek enforcement or modification in Illinois of a judgment entered in another State and are not necessary to confer jurisdiction on the court. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) Moreover, the supreme court in *Bussey* concluded that, under section 511, a party seeking modification of a foreign decree need not file both a petition to enroll the judgment and another petition to modify it; rather, where a certified copy of the foreign judgment was before the court (see Ill. Rev. Stat. 1989, ch. 40, par. 511(c)), the petition to modify was sufficient to constitute a "petition to enroll" as contemplated by section 511. *Bussey*, 108 Ill. 2d at 292, 295.

Under these principles, even if this case were dismissed, Linda's 1992 petitions to modify visitation and support were sufficient to reinitiate the proceedings. The petitions made reference to the Pennsylvania judgment, and the record indicates that a copy of the judgment was before the court. Accordingly, Charles' argument is without merit.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and THEIS, J., concur.