*In re* CUSTODY OF GARRETT ANTHONY ROSE, a Minor (*In re* Marriage of Martha T. Stack, Petitioner-Appellee and Cross-Appellant, and Michael D. Rose, Respondent-Appellant and Cross-Appellee).

Second District   Nos. 2—95—0300, 2—95—0918 cons.

Opinion filed June 13, 1996.—Rehearing denied July 16, 1996.

424

Paul L. Feinstein, of Kaufman, Litwin & Feinstein, of Chicago, for appellant.

Edward U. Notz, of Law Offices of Edward U. Notz, P.C., of Chicago, for appellee.

Michael J. Cummins, of Cummins, Mardoian & Lesser, of Lake Forest, guardian *ad litem*.

JUSTICE COLWELL delivered the opinion of the court:

This case involves appeals and cross-appeals in two consolidated dissolution and custody actions. In appeal No. 2—95—0918,

respondent-appellant and cross-appellee, Michael Rose, contends that the trial court erred: (1) in finding that it had subject matter jurisdiction over the parties' marital dissolution and the custody of Garrett Anthony Rose, the couple's minor son; (2) in finding that it had jurisdiction to dissolve the parties' marriage; (3) in determining that grounds (*i.e.*, irreconcilable differences) for marital dissolution existed; (4) in bifurcating the dissolution from distribution of the parties' property (over which it found no jurisdiction); (5) in finding that if Michael chose to participate in the custody hearing he would waive his special and limited appearance; and (6) in awarding sole custody of Garrett to Martha rather than joint custody.

In the same case, petitioner-appellee and cross-appellant, Martha Stack, contends that the trial court erred: (1) in finding that it did not have personal jurisdiction over Michael; (2) in finding that it did not have jurisdiction to distribute the parties' property; and (3) in granting Michael summary judgment on Martha's dissolution count alleging mental cruelty. Each party has also brought a motion to dismiss the other's appeal as untimely, and we ordered both motions taken with the case.

In appeal No. 2—95—0300, Michael contends that the trial court erred: (1) in finding that Michael's motion for an order finding that he could not be served with process in Illinois if he came here to exercise his visitation rights was a request for an advisory opinion; and (2) in refusing to "modify" its previous visitation order. In the same case, Martha contends that Michael's actions in seeking the enumerated relief waive his contention that Illinois courts have no personal jurisdiction over him.

## FACTUAL AND PROCEDURAL HISTORY

We turn now to the substance of the parties' appeals. The following facts are derived from the record. Michael, Martha, and Garrett are all United States citizens. Martha and Michael met while both were employed by Merrill Lynch in its London office. They married in the State of Rhode Island in September 1990. The parties came to Illinois, where Martha's parents live (and where she apparently lived until she left for college) and executed a variety of estate and tax-planning documents drafted by a Lake County attorney in accordance with Illinois law. Both parties were transferred to Merrill Lynch's Tokyo office shortly after the marriage.

Martha testified that she unexpectedly found that she was pregnant in May 1991. She said she was increasingly unhappy in the marriage and unhappy that Michael seemed disinterested in addressing her concerns. Martha told Michael she wished to give birth in the

United States because she was concerned about the language barrier in Japan and she would feel more comfortable in America. Michael derided her concerns and insisted that she have the baby in Tokyo. Nonetheless, Martha returned to Illinois and Garrett was born November 7, 1991, in Highland Park.

Martha testified that in March 1992 she told Michael that she was having a hard time adjusting to motherhood and life in Japan. Michael responded that perhaps they should move from their Tokyo apartment to a house in a more rural area of Japan. Martha said that she told Michael she wanted to return to the United States, and she suggested that New York would be the easiest place for Michael to transfer to. She said Michael responded that he did not want to work in New York and that he planned to stay in Japan.

In May 1992, Martha was preparing to leave with Garrett for a six-week visit in the United States. Martha told Michael that he should view the trip as a separation, and he should:

"[T]hink long and hard about what commitment to marriage and a child meant. And [sic] he should think about whether or not I was important enough to him to start making the attempt to come home early [from work], spend weekends with us and meet us, being Garrett and I [sic]. And that I hoped he would give it some serious thought while I was gone."

Martha said that Michael laughed and asked if she was threatening not to come back. She responded that she intended to return, but that he should be "aware of the fact that we have severe difficulties in our marriage and they need to be addressed."

The parties discussed the subject of separation again in September 1992. Martha said she told Michael that "a separation was in order." Michael responded that if she felt that way, she should leave immediately. Testifying that she was "shocked" at his reaction, Martha said she asked Michael, "Do you understand what I'm proposing?" Michael said yes. Martha then said, "I don't think you understand. I mean to take Garrett with me to the United States and not to come back to physically live here." She testified Michael said, "I don't think I could bear the sight of you and Garrett during the next three months knowing that you're going to leave me anyway. So I suggest you change your flight and leave right away."

Martha testified that she and Garrett flew directly to Chicago and moved in with her parents in Highland Park. They lived with her parents from September 1992 until January 17, 1994, when they moved into a nearby home that Martha purchased. She said the home is owned by a land trust, of which she is the sole beneficiary, with Garrett as the remainderman in the event of her death. She

used funds she had withdrawn from the parties' joint account in Japan to purchase the home. She obtained an Illinois driver's license in November 1992, registered to vote in Lake County in January 1993, and voted in two elections there. She said she relinquished her own and Garrett's Japanese alien registration cards on or about December 15, 1992. Martha filed for divórce in January 1993. She took Garrett to visit Michael in Japan in February 1993, and at that time she served him with notice of the divorce and custody proceedings.

Martha testified that the last time she had sexual intercourse with Michael was July or August 1991 and that she last shared a bed with him in November 1992. She said that she and Michael had met with the court-appointed conciliator and that she did not wish to attempt further to reconcile with Michael.

Martha testified that Garrett has made many friends in Highland Park, attends activities there, and has a close relationship with Martha's parents, who live a few blocks from Martha and Garrett's house. She has not worked since April 1992. Martha also presented testimony from several neighbors and friends in Highland Park, all of whom testified that Martha is a good mother, that they trust her to baby-sit their own children, and that Garrett is a happy, well-adjusted child.

Under cross-examination, Martha testified that, in the autumn of 1993, she entered into a sexual relationship with a former colleague at Merrill Lynch, who later became Michael's boss at the company. She said she was offered a position in Merrill Lynch's London office, but had not yet accepted it. She testified that if she accepted the position, she considered that Illinois would be her permanent residence and London would merely be her place of employment. She also interviewed with Merrill Lynch's New York and Chicago offices.

She also admitted that, despite the fact that the parties had both executed estate documents describing themselves as residents of "Highland Park, Lake County, Illinois," neither she nor Michael was in fact a resident of Illinois at the time the documents were executed. She also conceded several other technical defects in the documents.

Michael's entry into the proceedings was made as a "special and limited appearance." He contended that the trial court did not have personal jurisdiction over him or subject matter jurisdiction over the dissolution or Martha's motion for custody. The trial court found it had jurisdiction over the dissolution due to Martha's residency in Illinois for 90 days next preceding the filing of her causes of action in January 1993. The court further found that it had subject matter jurisdiction over child custody pursuant to the Uniform Child Custody

Jurisdiction Act (Act) (750 ILCS 35/1 *et seq.* (West 1992)). Although the court found that Illinois was not Garrett's home state pursuant to the Act because he had not lived here for six months, it found that it had jurisdiction pursuant to other sections of the Act. 750 ILCS 35/4(a) (West 1992).

The trial court granted Michael's motion for summary judgment on Martha's count alleging mental cruelty, but found that the marriage was irretrievably broken and thus granted Martha's petition for dissolution on the ground of irreconcilable differences. The court bifurcated the judgment, finding that because it lacked personal jurisdiction over Michael it could not enter orders regarding division of marital property or other collateral issues.

The trial court then found that under the Act Michael's appearance to defend Martha's custody action did not constitute a general appearance. Thus, although it could decide custody and visitation, it had no jurisdiction to order Michael to pay child support. However, the court then found that if Michael elected to proceed on his counterpetition for custody, Michael would waive his special appearance. The court proffered to Michael's counsel a case, *In re Marriage of Buchanio*, which held that, under the Act, any action, defense, or motion brought by a party other than a contention of lack of personal or subject matter jurisdiction constitutes a general appearance. See *In re Marriage of Buchanio*, 262 Ill. App. 3d 910, 914-15 (1994). The court warned Michael that if he chose to proceed on his counterpetition for custody, the court "might or might not" find that he had submitted to personal jurisdiction. Michael withdrew his counterpetition for custody.

## SUBJECT MATTER JURISDICTION: CHILD CUSTODY

■ Michael's first contention on appeal is that the trial court erred in finding that it had subject matter jurisdiction over child custody. As Michael notes, there are four general bases upon which Illinois courts can find subject matter jurisdiction under the Act. The jurisdiction provision of the statute is as follows:

"(a) The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:

1. this State

(i) is the home state of the child at the time of commencement of the proceeding, or

(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

2. it is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

3. the child is physically present in this State and

(i) the child has been abandoned or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

4. (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1., 2., or 3., or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and

(ii) it is in the best interest of the child that this court assume jurisdiction." 750 ILCS 35/4(a) (West 1992).

The term "home state" is defined in the Act as:

"[T]he state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, \*\*\* however, periods of temporary absence of any of the named persons are counted as part of the 6-month \*\*\* period." 750 ILCS 35/3.04 (West 1992).

The foregoing statutory provisions cannot be applied in a mechanical fashion, but require the exercise of discretion by the trial court. Accordingly, a trial court's decision not to decline jurisdiction to a foreign court will be affirmed absent an abuse of discretion. *In re Marriage of Kehres,* 164 Ill. App. 3d 148, 153 (1987). Martha commenced her dissolution and custody proceedings in January 1993. Consequently, as the trial court properly found, Illinois was not Garrett's home state, as he and Martha moved in with her parents on September 25 or 26, 1992. Similarly, none of the requisites of section 3.04 of the Act are alleged. Thus, jurisdiction would be found, if at all, under either section 2 or section 4 of the Act.

Michael contends that sections 2 and 4 are inapplicable because (1) at the time of the commencement of the action Garrett had spent more time physically present in Japan than in Illinois, and, thus, the majority of the information about his care, protection, training, and personal relationships could be found in Japan; (2) Martha "admitted" she was "planning to move to London," and thus she and Garrett remained residents of Japan, because Martha never intended to reside permanently in Illinois and thus could not be an Illinois resi-

dent; and (3) Martha's and Garrett's only connections with Illinois were that they were living here and that Martha's parents lived here at the time of the commencement of the action.

Michael cites *In re Marriage of Miche*, 131 Ill. App. 3d 1029 (1985), for the proposition that section 4(a)(2) of the Act is intended to limit, rather than proliferate, jurisdiction. The *Miche* court said:

" 'The interest of the child is served when the forum has optimum access to relevant evidence about the child and the family. There must be maximum rather than minimum contact with the state.' [Citation.] Further, the term 'substantial evidence' in the statute was not intended to be used as a substitute for 'some evidence,' as may be used in other contexts, but was rather intended to require a high degree of connection and access to evidence." *Miche,* 131 Ill. App. 3d at 1032.

■ However, we note that *Miche* is distinguishable on several grounds. First, the *Miche* court found that, under the stated purpose of the Act, " 'courts of this State [should] decline the exercise of jurisdiction when the child and his family have a closer connection with another state.' " (Emphasis omitted.) *Miche*, 131 Ill. App. 3d at 1033, quoting Ill. Rev. Stat. 1983, ch. 40, par. 2102(a)(3). However, as the court in *Kehres* noted, where there is a question as to whether Illinois courts' declination of jurisdiction may leave the parties without any forum at all in which to litigate their dispute, Illinois should consider that fact in determining jurisdiction. See *Kehres*, 164 Ill. App. 3d at 153-54. As Martha notes, although Michael has filed for custody in Japan, the Japanese court has not as yet accepted jurisdiction. There is further no evidence that Japan adheres to the principles of the Act, literally or in spirit. The Act presumes communication between the courts of various states when jurisdiction is contemplated by both. 750 ILCS 35/7 (West 1992). Under section 7, the court which is asked to assume jurisdiction after proceedings have been filed in another jurisdiction is charged with investigating the circumstances and initiating communication with the other jurisdiction. Michael presents no evidence that the Japanese court has attempted to communicate with the Illinois court. Michael argues that his attorney's affidavit contemplates that the Japanese court, by its own laws, does have jurisdiction and will exercise its jurisdiction. However, we note that the Japanese court had not taken affirmative action at the time of the proceedings in our circuit court. Thus, were both Illinois and Japan to decline jurisdiction, the parties might be left without a forum.

Further, Michael fails to specify what information about Garrett's *present* or *future* care, protection, training, and personal

relationships is available in Japan. All of the information about Garrett's then-"present" life was in Illinois, since he lived here since he was less than one year old and had formed relationships with a variety of people here, many of whom testified as to his present circumstances. As to his future, there is no firm evidence offered by either party. Michael contends that Martha "admitted" that she intended to move to London. However, we find that Martha merely admitted that she had been offered a position in London; she had not accepted it or definitively indicated her intention to accept it. In fact, she had interviewed (or intended to interview) at two other Merrill Lynch offices, including Chicago. Michael failed to offer any information about his plans for Garrett's future, while Martha's evidence indicated ongoing activities in Illinois in which she had engaged the child for an indeterminate length of time.

The remainder of the cases cited by Michael are likewise distinguishable. We first note that most involve a jurisdictional question between Illinois and another United States state which adheres to the Act. However, the applicable section of the Act requires comity be applied to judgments rendered by courts in other countries if notice and an opportunity to be heard were provided by the foreign court. See 750 ILCS 35/24 (West 1992). Michael notes that the Japanese court does provide notice and an opportunity to be heard. However, Martha filed her action in Illinois before Michael filed in Japan, and the Japanese court has yet to rule on its own jurisdiction over Michael's application. Michael offers no evidence of whether the Japanese court considers the availability of jurisdiction in other forums before determining its own, as the Act requires of Illinois courts. Of the remaining cases Michael cites, three involve jurisdiction to be assumed by British courts, whose laws were found to be sufficiently similar to the Act, and one involved Italy, wherein it was found that the children involved had lived in Italy all of their lives, had attended school there, and had been brought to Indiana by one parent 97 days before the cause of action was filed expressly against the will of the other parent. Conversely, Martha made every effort to involve Michael in her decision to take Garrett from Japan. We find that the trial court did not abuse its discretion in finding that it had subject matter jurisdiction over Garrett's custody under the Act.

## PERSONAL JURISDICTION OVER MICHAEL

We will address Michael's next contention, that the trial court erroneously ruled that proceeding on his petition for custody would waive his jurisdictional objection, with Martha's contention on cross-appeal that the trial court should have found personal jurisdiction

over Michael. Michael contends that he is entitled to proceed on any matter concerning custody or visitation under the Act without waiving his objection to personal jurisdiction. Michael argues that the Act defines a custody determination as "a court decision and court orders and instructions providing for the custody of a child, *** but *** does not include a decision relating to child support or any other monetary obligation of any person." 750 ILCS 35/3.02 (West 1992). He cites *In re Marriage of Schuham*, 120 Ill. App. 3d 339 (1983), wherein the court found that proceedings as to child custody and visitation under the Act are quasi *in rem* proceedings, and thus personal jurisdiction is not required, and that, once jurisdiction is assumed pursuant to the Act, custody and visitation orders can be entered without regard to whether either parent has submitted to the court's jurisdiction. Thus, the *Schuham* court held that a father's election to proceed after *losing* his motion for a finding of lack of personal jurisdiction did not act to waive his objection. Michael argues that for the court to have found that he could not proceed on his counterpetition for custody after ruling in Michael's *favor* on the issue of personal jurisdiction is illogical since, under *Schuham*, he could have proceeded if the court had ruled against him.

■ We find that Michael construes the court's *in rem* jurisdiction under the Act too broadly. As the trial court properly found, Michael was free to defend Martha's petition for custody; however, Michael additionally filed his own petition for custody. Such an action constitutes submission to the court's general jurisdiction. See *Buchanio*, 262 Ill. App. 3d at 914-15. Further, a motion challenging the court's subject matter jurisdiction or a motion to dismiss based on the pendency of a similar action in another forum usually constitutes a general appearance, even when made in conjunction with a motion challenging personal jurisdiction. *Buchanio*, 262 Ill. App. 3d at 914. However, under the Act, a party may object to subject matter jurisdiction without waiving objections to personal jurisdiction. *Buchanio*, 262 Ill. App. 3d at 915. In this case, however, by bringing his own petition for custody, Michael was not merely exercising his right to be heard on the issue of custody; he was seeking the protection of Illinois law.

Notably, this conclusion does not, as Michael contends, violate his due process rights because, if Michael had successfully defended Martha's petition for sole custody, he would necessarily have been entitled to custody himself, absent a finding of unfitness. As Garrett's parents, Martha and Michael hold superior positions to all others with regard to his custody. Therefore, Michael need only defend Martha's petition for sole custody successfully in order to be entitled to

some level of custody himself by "default." Thus, the trial court correctly found that, by affirmatively proceeding with his own petition for custody, Michael would waive his objection to personal jurisdiction.

This does not end our inquiry, however. We note that the trial court tendered to the parties copies of the *Buchanio* case and warned Michael that it "might" find personal jurisdiction if Michael elected to proceed with his petition. As Martha notes, however, under the terms outlined in *Buchanio*, the mere filing of the counterpetition constitutes a general appearance. The trial court does not have the power to "undo" a submission to general jurisdiction by *sua sponte* prompting the erring party to withdraw its appearance. Thus, we find that the trial court erred in finding that it does not have personal jurisdiction over Michael. Michael's argument that his petition likewise involved a custody issue under the Act is unavailing. Notwithstanding his contention that personal jurisdiction is waived only if he brings an action over which the court would have no jurisdiction to act at all in the absence of personal jurisdiction (see *Supreme Hive Ladies of the Maccabees of the World v. Harrington*, 227 Ill. 511, 525 (1907), we find, as noted, that an affirmative attempt to avail himself of the protection of Illinois law constitutes a general appearance. Thus, Michael has irretrievably submitted to the personal jurisdiction of the Illinois courts, and we must remand the cause to the trial court so that it can address any issues which require personal jurisdiction over both parties.

We note that Martha's contentions on cross-appeal regard whether the filing of the motion for modification by Michael waives his objections to personal jurisdiction. As noted, we have already addressed the issue of personal jurisdiction above and need not do so again here.

For the foregoing reasons, the judgment of the circuit court of Lake County in appeal No. 2—95—0918 is affirmed in part and reversed in part, and the cause is remanded for further proceedings. The judgment in appeal No. 2—95—0300 is affirmed.

No. 2—95—0300, Affirmed.
No. 2—95—0918, Affirmed in part and reversed in part; cause remanded.

DOYLE and RATHJE, JJ., concur.