*In re* MARRIAGE OF PAULA D. BLANCHARD, Petitioner-Appellee, and JAMES C. BLANCHARD, Respondent-Appellant.

Second District    No. 2—98—0782

Opinion filed June 10, 1999.

Robert T. Edens, of Gurnee, for appellant.

Martin J. Coonen and Stephen A. Oakley, both of Coonen & Roth, Ltd., of Crystal Lake, for appellee.

JUSTICE GALASSO delivered the opinion of the court:

The respondent, James C. Blanchard, appeals from an order of the circuit court of McHenry County dismissing his petition for a rule to show cause against the petitioner, Paula D. Gill, formerly known as Paula D. Blanchard. We affirm the order of the trial court.

On August 7, 1991, a judgment for dissolution of marriage was entered dissolving the marriage of the parties. Pursuant to the terms of that judgment, custody of the parties' minor child, Destiny Nicole Marie Blanchard, was awarded to Paula. Paula was also granted the right to move to the State of Virginia. James' visitation rights with

Destiny contemplated Paula's relocation to Virginia on a permanent basis.

On May 22, 1998, James filed a petition for a rule to show cause and order for the return of the child. In his petition James alleged that in 1992 Paula and Destiny had moved back to Illinois from Virginia. Subsequently, however, Paula, without leave of court, had moved with Destiny to the State of Georgia. James specifically alleged as follows:

"12. That [Paula] has removed [Destiny] in violation of the Judgment of Dissolution granting [James] visitation with [Destiny] and in prohibition of this court's orders concerning removal of [Destiny] from the state.

13. That [Paula] has wilfully and wantonly failed and refused to grant [James] reasonable visitation with [Destiny] in violation of court orders."

James further alleged that Paula had told him that she would never permit Destiny to leave Georgia no matter what the court ordered. James requested that Paula be held in contempt of court and punished for her failure to comply with the removal and visitation portions of the judgment for dissolution of marriage and that the court order that Destiny be returned to Illinois.

Paula filed a special and limited appearance and a motion to dismiss for lack of jurisdiction. In her motion, Paula alleged that, pursuant to the Uniform Child Custody Jurisdiction Act (the Act) (750 ILCS 35/1 *et seq.* (West 1996)), Georgia, rather than Illinois, was the appropriate forum for the litigation of James' petition. In her affidavit in support of her motion to dismiss, Paula stated that Destiny and she had resided in Douglasville, Georgia, since October of 1994; that since 1994, she had not been in Illinois other than in connection with Destiny's visitation periods with James; and that she had filed a motion in a Georgia court to enroll the Illinois judgment for dissolution of the parties' marriage. However, no case number or other proof that such a motion had been filed in Georgia was provided. In response, James argued that the Act was not relevant to these proceedings because custody was not at issue. In addition, he neither admitted nor denied that Paula had filed a motion to enroll the Illinois judgment for dissolution of marriage in Georgia but demanded strict proof of that fact. However, he affirmatively stated that he had not received any notice of such motion as required by law.

The trial court found that, while Illinois had jurisdiction over the issues of custody and visitation in this case, Illinois was an inconvenient forum and that Georgia was the appropriate forum for the litigation of these issues. The trial court conceded jurisdiction to Georgia pursuant to the Act. This appeal followed.

■ The general purposes of the Act are, *inter alia*, to (1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody; (2) promote cooperation with the courts of other states to the end that a custody judgment is rendered in that state that can best decide the case in the interest of the child; (3) assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and her family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts decline the exercise of jurisdiction when the child and her family have a closer connection with another state; and (4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child. 750 ILCS 35/2(a) (West 1996). Section 4 of the Act grants jurisdiction to circuit courts to make a child custody determination by initial or modification judgment if certain criteria are met. 750 ILCS 35/4(a) (West 1996).

■ The question of jurisdiction of the appellate court must be decided prior to addressing the merits of an appeal. *Mar Cement, Inc. v. Diorio Builders, Inc.*, 153 Ill. App. 3d 798, 800 (1987). We have a duty to consider our jurisdiction even if the parties do not raise the issue. *Ferguson v. Riverside Medical Center*, 111 Ill. 2d 436, 440 (1985). This court has jurisdiction only of appeals from final orders. *Nelson v. United Airlines, Inc.*, 243 Ill. App. 3d 795, 799 (1993). An order or judgment is final only if it terminates the litigation between the parties on the merits or disposes of the rights of the parties upon the entire controversy. *First Chicago Gary-Wheaton Bank v. Gaughan*, 275 Ill. App. 3d 53, 58 (1995).

■ In response to Paula's motion to dismiss for lack of jurisdiction, the trial court, in effect, denied the motion when it found that it had jurisdiction over the issues of custody and visitation raised in this case. However, the court then ruled that, pursuant to the Act, Georgia was the appropriate forum in which to litigate these issues. The trial court did not specifically mention that James' petition for a rule to show cause was dismissed. However, since James' petition sought to have Paula held in contempt for her actions in connection with the visitation and removal issues, the trial court's concession of jurisdiction to Georgia was tantamount to a dismissal of the petition for a rule to show cause. Therefore, we determine that we have jurisdiction of this appeal, and we turn to the issues raised therein.

James contends, first, that the Act does not extend to this cause because he is not seeking to modify the custody or visitation provisions of the original judgment; rather, he is requesting that the court

exercise its contempt powers to punish Paula for violating the terms of the judgment for dissolution of their marriage.

■ Section 3.02 of the Act defines "custody determination" as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights but such term does not include a decision relating to child support or any other monetary obligation of any person." 750 ILCS 35/3.02 (West 1996); *In re Marriage of Buchanio*, 262 Ill. App. 3d 910, 915 (1994). The Act further defines "custody proceeding" as "proceedings in which a custody determination is one of several issues, and includes child neglect and dependency proceedings." 750 ILCS 35/3.03 (West 1996).

■ We are of the opinion that the proceedings here are custody "proceedings in which a custody determination is one of several issues." 750 ILCS 35/3.03 (West 1996). One of the issues is James' request to have a rule to show cause issue against Paula for her failure to comply with the judgment for dissolution of marriage in that Paula interfered with James' visitation rights and improperly removed Destiny from Illinois to Georgia. Visitation rights are also part of a "custody determination" under the Act. 750 ILCS 35/3.02 (West 1996); *Buchanio*, 262 Ill. App. 3d at 915.

James' argument that he is not seeking changes to either custody or visitation is belied by the allegations of the petition for a rule to show cause and the relief requested therein. While we agree that at the present time James is not formally requesting a change in Destiny's custody, it is James himself who alleged interference with his visitation rights and seeks Destiny's return to Illinois by asking the court to enforce the judgment for dissolution of marriage. However, the judgment in this case does not require that either Paula or Destiny live in Illinois. Therefore, by his prayer for relief, James is actually seeking modification of his visitation rights and not merely to have Paula punished for her refusal to abide by the judgment for dissolution of marriage. Since a "custody determination" includes court orders and instructions concerning visitation rights, regardless of what label he gives the proceedings, James' seeking modification of his visitation rights with Destiny presents the court with a "custody determination" as defined by the Act.

James' reliance on *In re Adoption of Scheidt*, 89 Ill. App. 3d 92 (1980), is misplaced. In that case the court noted that only that portion of the Act vesting jurisdiction in the court is specifically incorporated into the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/601(a) (West 1996)), and therefore the standards for determining custody set forth in the Marriage Act are not mandatory in a guardianship proceeding. *Scheidt*, 89 Ill. App. 3d

at 97. The court further noted that the only purpose of the Act was the determination of the proper forum for the trial of a child custody dispute. *Scheidt*, 89 Ill. App. 3d at 97. *Scheidt* did not involve a jurisdictional conflict between two states, as is the case here, and as illustrated above, the proceeding in this case does involve a child custody dispute even if James has not labeled it as such.

We hold that since James was in fact seeking a modification of his visitation rights with Destiny, regardless of how he chose to label his petition, he presented the trial court with a "custody determination" as defined by the Act. The Act therefore applies to this proceeding.

James then contends that the trial court abused its discretion when it conceded its jurisdiction to Georgia.

■ The Act provides that a court may decline to exercise its jurisdiction to enter a custody judgment if it finds that it is an inconvenient forum to make a custody determination under the circumstances of that case and that a court of another state is a more appropriate forum. 750 ILCS 35/8(a) (West 1996). The Act further provides that, in making a finding that it is an inconvenient forum, the trial court shall consider whether it is in the best interests of the child that another state assume jurisdiction and that, in making that determination, the court may be guided by the following factors:

> "1. if another state is or recently was the child's home state;
>
> 2. if another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> 3. if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
>
> 4. if the parties have agreed on another forum which is no less appropriate; and
>
> 5. if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in Section 2 of this Act." 750 ILCS 35/8(c) (West 1996).

A finding of inconvenient forum may be made upon the court's own motion or upon the motion of a party or a guardian *ad litem* or other representative of the child. 750 ILCS 35/8(b) (West 1996).

As the application of these criteria requires the exercise of the trial court's discretion, a decision declining jurisdiction in favor of another court will be affirmed absent an abuse of that discretion. *In re Marriage of Elblkasy*, 241 Ill. App. 3d 662, 665 (1993). The primary objective of the trial court is to determine which court can most capably act in the best interests of the child. *Elblkasy*, 241 Ill. App. 3d at 665.

James maintains that, in order to concede jurisdiction to another

state pursuant to section 8 of the Act, a court must find that there is a pending custody proceeding in another state upon which to concede jurisdiction. He argues that, because Paula did not supply a case number for her motion to enroll the Illinois judgment for dissolution of marriage in Georgia, there is no foreign jurisdiction to which the Illinois court here could concede jurisdiction.

However, James overlooks section 8(e), which provides in pertinent part as follows:

> "If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum." 750 ILCS 35/8(e) (West 1996).

Therefore, it was not necessary for Paula to have previously commenced proceedings to enroll the Illinois judgment in Georgia prior to the Illinois court conceding jurisdiction to Georgia.

*In re Marriage of Kehres*, 164 Ill. App. 3d 148 (1987), relied on by James, is distinguishable from the present case. In that case, the reviewing court affirmed the trial court's decision not to concede jurisdiction, not only because the other state had refused to exercise jurisdiction but because a consideration of the relevant factors revealed that the children retained a significant connection with Illinois and that there was available in Illinois substantial evidence concerning their care, protection, training, and personal relationships. *Kehres*, 164 Ill. App. 3d at 153-54. Likewise, *In re Marriage of Kitchen*, 126 Ill. App. 3d 192 (1984), is also distinguishable. In that case, the reviewing court affirmed the trial court's refusal to concede jurisdiction because there was evidence that the mother and the minor child resided in Illinois within six months of the Illinois contempt proceeding the mother brought against the father and that evidence of the child's well being during the period between the Illinois temporary custody order and the contempt proceeding could be more readily documented in Illinois than in any other state. *Kitchen*, 126 Ill. App. 3d at 196.

In her motion to dismiss, supported by her affidavit, Paula alleged that Georgia is Destiny's home state in that she has lived there for more than six consecutive months; Destiny has spent only brief periods of visitation in Illinois since 1994; all the evidence concerning Destiny's care, protection, training, and personal relationships—such as medical information, friends and adult contacts, and social and recreational activities—is available in Georgia rather than in Illinois; and Paula had filed a motion in the Georgia court to enroll the Illinois

judgment of dissolution of marriage. While refusing to concede the truth of the allegations of Paula's affidavit in support of her motion to dismiss, James offered no affirmative evidence to dispute them, other than that he did not receive notice of the filing of the motion.

In light of the statutory factors and the uncontested allegations in this case, we find that the trial court did not abuse its discretion when it conceded jurisdiction to the Georgia court in this case.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

McLAREN and RAPP, JJ., concur.